[Crim. No. 3116. In Bank.—July 5, 1928.]

THE PEOPLE, Respondent, v. WILLIAM EDWARD HICKMAN, Appellant.

Jerome K. Walsh, R. H. Cantillion, F. A. Sievers, and William Condon for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, W. F. Cleary and John W. Maltman, Deputies Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

Walter K. Tuller, *Amicus Curiae.*

WASTE, C. J.—The defendant was charged with having kidnaped and murdered Marion Parker, a twelve year old Los Angeles schoolgirl. He confessed to the commission of the offenses charged, and, the only defense in the case being that he committed the acts while insane, he entered a plea of "not guilty by reason of insanity" to both counts of the indictment. When the cause came on for trial, the prosecution rested its case upon the reading of the indictment and

the pleas of the defendant thereto. The defendant and the prosecution thereupon introduced evidence bearing on the subject, and there was submitted to the jury the sole question whether the defendant was sane or insane at the time the offenses were committed. The jury returned its verdicts, finding the defendant was sane. Motions for a new trial and in arrest of judgment were denied, and the court found and determined the crime of murder committed by the defendant to be "murder of the first degree without extenuating circumstances." Defendant was thereupon sentenced to be imprisoned in the state's prison for the term prescribed by law for the crime of kidnaping, and sentenced to pay the extreme penalty for the murder committed. He appeals from the judgments and from the orders denying the motions for new trial and in arrest of judgment.

 The important question presented by the appeal, and the one to be first considered, is raised by the contention of the defendant that, when he was forced to plead and to go to trial under the form of procedure now prescribed by the Penal Code of this state (secs. 1016 et seq.), relating to the kinds of pleas which may be entered to an indictment or information, and the procedure to be followed after the plea, he was deprived of his constitutional right to a trial by jury. He contends that by entering the plea on which he elected to stand, he denied his guilt as effectively as if he had entered a plea of "not guilty," and was therefore entitled to the trial guaranteed by the state constitution upon all the issues involved in the case, as well as upon the issue of his sanity. That, he contends, he was denied.

Appellant fails to grasp the full import of the present statute. Prior to 1927, there were four kinds of pleas open to a defendant, to wit: A plea of (1) guilty; (2) not guilty; (3) a former judgment of conviction or acquittal; and (4) once in jeopardy. (Pen. Code, sec. 1016.) The legislature, in 1927, added another, viz.: "(5) not guilty by reason of insanity," and further amended the code section by providing that "A defendant who does not plead guilty may enter one or more of the other pleas. A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged, provided that the

court may for good cause shown allow a change of plea at any time before the commencement of the trial. A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged." Section 1017 of the code was amended to provide that if the defendant plead "not guilty by reason of insanity," such plea shall be entered upon the minutes of the trial court substantially in the following form: "The defendant pleads that he is not guilty of the offense charged because he was insane at the time he is alleged to have committed the unlawful act." At the same time, there was added a new section (1026) to the Penal Code, in part reading as follows: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury, in the discretion of the court. In such trial the jury shall return a verdict either that the defendant was sane at the time the offense was committed or that he was insane at the time the offense was committed. If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law." Then follow provisions not now material to this discussion as to the procedure to be followed if the verdict or finding of the jury be that the defendant was insane at the time the offense was committed. (Stats. 1927, pp. 1148–1150.)

While the constitution of the state of California provides that the right of trial by jury shall be secured to all persons and shall remain inviolate (Const., art. I, sec. 7), the only right which it guarantees is that the citizens of the state shall have an opportunity to be tried by a jury, in cases in which it is exercised in the administration of justice according to the common law, as that law is understood in the several states of the Union. (*People* v. *King*, 28 Cal. 265, 271; *People* v. *Powell*, 87 Cal. 348, 356 [11 L. R. A.

75, 25 Pac. 481].) It does not purport to direct what procedure is to be followed in the exercise of the right. The authorities in this and in other jurisdictions bear out the proposition that the making of a reasonable regulation of the mode of enjoyment of the right of trial by jury is not a denial or an impairment of that right. (*Conneau* v. *Geis,* 73 Cal. 176, 178 [2 Am. St. Rep. 785, 14 Pac. 580]; *Frank* v. *Mangum,* 237 U. S. 309, 339, 340 [59 L. Ed. 969, 35 Sup. Ct. Rep. 582].) The essence of trial by jury is that controverted facts shall be decided by a jury. Unless the facts are controverted, there is no issue to submit to a jury. It has never been doubted in this state that, while a defendant charged with crime amounting to a felony cannot expressly waive a trial by jury, he may enter a plea of guilty to the indictment or information, instead of having a jury trial, even though charged with a crime which carries the death penalty upon conviction. The statute has always provided for such a plea. (*People* v. *Delany,* 49 Cal. 394.) Yet a confession of the offense by the party charged, by a plea of guilty, is the highest kind of conviction which the case admits, and submits him to precisely the same punishment as if he were tried and found guilty by a jury. (*State* v. *Almy,* 67 N. H. 274 [22 L. R. A. 744, 28 Atl. 372]. See, also, *West* v. *Gammon,* 39 C. C. A. 271, 98 Fed. 426.) It was held, very early in our history, that there was no provision of the state constitution, or of any statute, which prevented a defendant charged with murder from pleading guilty instead of having a trial by jury, and that if he elects to plead guilty to the indictment, the provision of the statute for determining the degree of guilt, for the purpose of fixing the punishment, does not deprive him of any right of trial by jury. (*People* v. *Noll,* 20 Cal. 164.) *People* v. *Lennox,* 67 Cal. 113 [7 Pac. 260], and *People* v. *Chew Lan Ong,* 141 Cal. 550 [99 Am. St. Rep. 88, 75 Pac. 186], are to the same effect. By a parity of reasoning, we are of the view that a statute which, in addition to the usual pleas, merely permits a defendant in 'a criminal case, if he is so advised, to plead guilty, in effect, by failing to deny the commission of the offense charged, but which preserves to him the right to submit to a jury the issue that he should not be punished because he was insane at the time he committed the act, in no way deprives him of his constitutional right to a jury trial.

The present statute was passed by the legislature on the recommendation of the commission for the reform of criminal procedure, created by the legislature in 1925 to make a study of the methods of criminal procedure, and to recommend such new system, or such amendments to the then existing system, as would in its opinion tend to provide for this state the most efficient system for the swift and certain administration of criminal justice. The purpose of the statute is to overcome some of the abuses which have crept into the administration of justice by reason of the frequent interposition of the defense of insanity in criminal prosecutions. Its provisions are plain, and we deem it unnecessary to enter into a critical analysis or restatement of its various features to show that every essential right of one charged with crime by indictment or information has been safeguarded, and that a defendant, by availing himself of its various provisions, and entering the proper plea or pleas, may interpose and submit to the consideration of the jury every issue and every defense that has heretofore been open to him. Under proper pleas he may still submit all the evidence he could submit before the effective date of the amended statute. It has always been the law in this jurisdiction, for instance, that upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed amounts only to manslaughter, or that the defendant was justified or excused. (Crim. Prac. Act 1850; Stats. 1850, p. 232, par. 37; Pen. Code, sec. 1105.) ■ A person charged with crime is presumed to be sane until the contrary is established by a preponderance of evidence. (*People* v. *Williams,* 184 Cal. 590, 593 [194 Pac. 1019].) The rule requiring the defendant, where insanity is interposed as a defense, to prove it by a preponderance of the evidence, does not affect the other rule that the burden of proving sanity is on the prosecution. That burden has always been on it and is met in the first instance by the presumption of sanity which the law raises and which must prevail until it is overcome. The rule relating to the defense of insanity does not shift the burden of proof from the People to the defendant, but

only shifts the burden of introducing evidence and declares the amount or *quantum* of evidence which he must produce to overcome the presumption and show his insanity. (*People* v. *Harris,* 169 Cal. 53, 68 [145 Pac. 520].) ■ The present statute does not take away the defense of insanity, and the procedure followed in no way changed or affected the rule respecting the burden which rested on the prosecution and on the defense in this case.

We are firmly convinced that no right of the defendant guaranteed by the state constitution was injuriously or at all affected by his being compelled to proceed to trial under the sections of the code as recently amended. The statute gives, and he was accorded, a jury trial on the sole issue he desired to tender—in fact, the only issue under the evidence including his confession, which he could tender to the counts of the indictment. In concluding this phase of the discussion it may be said that the appellant thoroughly understood that in electing to stand upon the one plea of "not guilty by reason of insanity" he admitted the commission of the offenses charged against him.| He was at the time of the arraignment, and at all times, represented by able counsel. Before permitting the pleas to be entered, the trial court assured itself that the defendant himself was well aware of the nature and effect of his voluntary action.

■ Appellant further contends that the law under which he was tried violates the provisions of section one of the fourteenth amendment to the constitution of the United States (the "due process" and "equal protection" clause) relating to the powers of the several states. No federal question is here involved. ■ A state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights or conflict with specific and applicable provisions of the federal constitution. It is not tied down by any provision of the federal constitution to the practice and procedure which existed at common law. Subject to the limitations noted, it may avail itself of the wisdom gathered by experience to make such changes as may be necessary. (*Brown* v. *New Jersey,* 175 U. S. 172, 175 [44 L. Ed. 119, 20 Sup. Ct. Rep. 77; see, also, Rose's U. S. Notes].) There is nothing in the fourteenth amendment to

prevent a state from adopting a reasonable regulation of procedure in relation to jury trials. (*Frank* v. *Mangum, supra.*) ■ As used therein the term "due process" refers to the law of the land which derives its authority from the inherent and reserved powers of the states, exercised within the limitations of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, the greatest security of which resides in the right of the people to make their own laws and alter them at pleasure. It does not follow that merely because something has been the actual law of the land from time out of mind, it is therefore "due process." (*Hurtado* v. *California,* 110 U. S. 516, 529 [28 L. Ed. 232, 4 Sup. Ct. Rep. 111].) ■ The common law is only one of the forms of law and is no more sacred than any other. As a rule of conduct, it may be changed at the will of the legislature, unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. (*Munn* v. *Illinois,* 94 U. S. 113, 134 [24 L. Ed. 77].) ■ The power to legislate must not be exercised in an arbitrary or despotic manner, but any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power in the furtherance of the general public good, which regards and preserves the principles of liberty and justice, must be held to be due process of law. (*Hurtado* v. *California, supra,* p. 537.) Accordingly, it has been held that a statutory provision of a state, such as that already referred to, conferring power on the court, under a plea of "guilty," to determine the degree of crime in an indictment for murder, is constitutional and valid and violates no provision of the United States constitution. (*Hallinger* v. *Davis,* 146 U. S. 314 [36 L. Ed. 986, 13 Sup. Ct. Rep. 105].)

■ The fact that the new law and procedure of the state of California may appear to mark a departure from the law and procedure relating to the same subject in other states has no place in this consideration. The "equal protection" provision of the federal constitution does not secure to all persons in the United States the benefit of the same

laws and the same remedies. Great diversities in these respects may exist in states separated only by imaginary lines. On one side of the line there may be a right to trial by jury, and on the other side, under like circumstances, there may be no such right. (*Missouri* v. *Lewis*, 101 U. S. 22, 31 [25 L. Ed. 989].) A state may make different procedure for trials of even the same class of offenses. The fourteenth amendment merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. (*Hayes* v. *Missouri*, 120 U. S. 68 [30 L. Ed. 578, 7 Sup. Ct. Rep. 350]; *Brown* v. *New Jersey, supra*, p. 177.)

Measured by these standards, we are satisfied that the statute under which the appellant was tried and convicted violates no provision of the federal constitution.

▮ Another contention of the appellant is that the trial below was conducted by a judge of the superior court who had no jurisdiction in the premises. The contention is without merit. The superior court of Los Angeles County is composed of thirty-eight regular and a number of extra sessions departments. It is therefore required by the constitution to have a presiding judge who, subject to the regulations of the judicial council, "shall distribute the business of the court among the judges and prescribe the order of business." (Const., art. VI, sec. 7.) When this cause came on for trial, objection was made to proceeding before the judge who had taken and entered the pleas, upon the ground that he was biased and prejudiced against the defendant. The judge filed a denial of bias or prejudice, but, upon the ground that he desired to avoid arresting the trial by a protracted hearing with reference to his qualifications, and in order that the cause might be heard and determined with the least possible delay, consented to retire from the case. The presiding judge thereupon made and caused to be entered an order that the trial proceed before another judge of the superior court, then sitting in the Los Angeles court under assignment by the chairman of the judicial council. The procedure followed was in strict accord with the terms of the constitutional provision, *supra,* and with section 170 of the Code of Civil Procedure.

It is next contended that the trial court erred in permitting the prosecution to exercise a peremptory challenge to a juror after the defendant had exhausted all of his peremptory challenges, and after challenge had been waived by him, and the prosecution was satisfied. It is also contended that further error was committed when the court refused to allow the defendant to exercise a peremptory challenge after permitting the state to do so, but after he had exhausted the number of peremptory challenges allowed by law. It does not appear that the prosecution was actually satisfied when twelve jurors had been passed before being sworn, or that it actually waived the right to exercise its peremptory challenges, even though the defendant might have been satisfied. The jurors had not been sworn, and the trial court was of the opinion—and the record supports its view—that the prosecution had not finally announced its satisfaction with the jurors, but had temporarily passed the challenge. Its allowance of the right of the prosecution to exercise a peremptory challenge under the circumstances was, therefore, at most but an irregularity not affecting, so far as we can ascertain from the record, any substantial right of the defendant. (*People* v. *Majors,* 65 Cal. 138, 148 [52 Am. Rep. 295, 3 Pac. 597].) As to the second contention, the defendant, having used all of his peremptory challenges, had no legal right to any more challenges of that nature. Further than asking to have the record show that it was not satisfied with the jury, the defense disclosed no reason to the trial court why it demanded the right to exercise a peremptory challenge after exhausting the statutory number, and has not made any showing here from which we can say that the defendant was prejudiced, or that the action of the court actually affected any of his substantial rights. The defense was not excluded nor prevented in any way from examining or re-examining, if that were deemed necessary, any or all of the jurors as to their qualifications, or from challenging the jurors for cause, if any existed. The record discloses that the defendant was tried by a fair and impartial jury, and the contention now made appears to be based on a technical ground, rather than on substance.

Complaint is made of the giving and refusing of certain instructions. After the jury was sworn to try the

cause, the trial court instructed the jurors that the sole issue for them to determine was the issue of whether the defendant was sane or insane at the time of the alleged commission of the acts charged in the indictment, and that further instructions would be given them later, after the testimony had been submitted, as to what is meant by the term "insanity" and as to the burden of proof in reference thereto. Under the present statute, the instruction was properly given. At the conclusion of the evidence, the defense submitted certain instructions which it requested the court to include in its final charge. They were refused. We have carefully considered the specifications of error (VI to XII, inclusive), dealing with that subject, and are convinced that the action of the court was proper. Certain of the rejected instructions relating to the insanity, or state of mind, of the defendant were sufficiently covered by the charge of the court to render there being given unnecessary. Other instructions as to what the defendant did or did not admit, in entering the plea "not guilty by reason of insanity," were contrary to the express provisions of the code sections (Pen. Code, secs. 1016 et seq., *supra*). Others, applicable if a plea of "not guilty" had also been joined, were not pertinent to the issue submitted to the jury. In view of what we have said concerning the other contentions raised by appellant, we are of opinion that the trial court properly and sufficiently instructed the jury on the issue of insanity tendered by the defendant's plea.

The contention that the trial court had no right to determine the degree of the murder committed by the defendant, or fix the penalty therefor, is without merit. Section 1157 of the Penal Code, which provides that whenever a crime is distinguishable into degrees the jury, if it convict the defendant, must find the degree of the crime of which he is guilty, has no application to the present situation. Section 190 of the same code alone applies.

We find no error or abuse of discretion in the action of the trial court in refusing the request of counsel for the defense that it should be permitted to open and close the argument to the jury because the burden of establishing the insanity of the defendant rested upon him. The Penal Code provides (sec. 1093) that, a jury having been impaneled and sworn, the trial must proceed in the order

therein prescribed, unless otherwise directed by the court. One of the provisions of the section is that, unless the case is submitted to the jury on either side, or on both sides, without argument, the district attorney, or other counsel for the People, and counsel for the defendant, may argue the case; the district attorney, or other counsel for the People, opening the argument and having the right to close. Section 1369 of the Penal Code, which might imply a different view, relates only to the procedure to be followed in an inquiry into the insanity of a defendant, before trial or after conviction, and has no reference to the actual trial of the issues tendered by the plea or pleas entered by the accused.

 Lastly, it is contended that the two judgments of conviction and sentence are void for the reason that each recites that the defendant "duly pleaded guilty" of the crime charged in the respective counts of the indictment. While, technically, the recitals are not in strict accord with the procedure followed, since the defendant did not actually enter the separate and distinct plea "guilty" as provided by the statute (Pen. Code, sec. 1016), the result of his action was an admission that he committed the offenses charged. In legal effect, therefore, the recitals state what actually took place. In any event, the objection goes to a mere irregularity which in no sense affects the substantial rights of the defendant. Each judgment refers to the crime with which the defendant was charged, and the appropriate count of the indictment under which he was arraigned and convicted by his own plea and the verdict of the jury as to his sanity. The penalty or sentence in each judgment is clearly and concisely stated. The judgments are, therefore, not void, and the situation is not one calling for a reversal.

No good purpose will be served by stating the substance of the evidence interposed by the defense, and met by the prosecution on the question of the sanity of the defendant at the time he committed the offenses charged. A number of witnesses testified, and much expert testimony was given on both sides of the question. The defendant did not offer himself as a witness, but the law which required his presence in court during his trial submitted him to the observation and scrutiny of the court and jury. (*People* v. *Cornell,* 203 Cal. 144 [263 Pac. 216].) The jurors, with whom rested the responsibility of determining the credibility of the

various witnesses who testified in the case, and the weight to be given to the evidence, found that the defendant was sane at the time he committed the acts. The finding of the jury was approved by the trial court when he denied the motion for a new trial. The finding of court and jury is conclusive upon the subject and upon this court, for there is ample evidence to support it.

By agreement of counsel, subject to objections on constitutional grounds reserved by the defendant, the testimony received and taken on the trial of the issue of insanity was considered with other evidence for the purpose of ascertaining and determining the degree of the murder committed by the defendant. It sustains to the fullest extent the finding of the trial court that the crime was murder of the first degree without extenuating circumstances.

The judgments of the trial court, and its orders denying the motion for a new trial and the motion in arrest of judgment, are, and each is, affirmed.

Curtis, J., Shenk, J., Preston, J., Tyler, J., *pro tem.*, and Richards, J., concurred.

Rehearing denied.

All the Justices present concurred.

Appellant's application for leave to appeal to the supreme court of the United States was denied on October 1, 1928, and the following opinion then rendered thereon:

WASTE, C. J.—William Edward Hickman, appellant, has filed with the Chief Justice an application to be allowed to appeal to the supreme court of the United States from the judgment and order of the supreme court of the state of California affirming his conviction of the crime of murder in the first degree, and imposing the death penalty, on the ground that the law under which he was tried and convicted (Pen. Code, secs. 1016, 1017, 1026, as amended in 1927, in so far as they apply to his case), violates certain provisions of the constitution of the United States. In the assignment of errors accompanying the petition, the appel-

lant renews the contentions he made in presenting the same points on the appeal from the judgment of the lower court.

After due consideration by this court of the contentions of the appellant and the arguments advanced in their support on the appeal, the court reached the conclusion that, in so far as the amended sections of the code, *supra*, applied to the case of the appellant, they violate no provision of the United States constitution. They provide for certain procedural steps to be taken in the trial of persons accused of crimes, and do not affect any substantive right of one entering only the plea of not guilty by reason of his insanity. (*People* v. *Hickman, ante*, p. 470 [268 Pac. 909].)

Being of the view that no federal question properly presentable to the supreme court of the United States is involved, the appeal to that court is not allowed.