Marshall, C. J.,
 

 dissenting. .The majority opinion in this case deals with the single question whether the trial court may, during the progress of the trial, suspend the proceeding in order that an inquiry may forthwith be made as to whether or not the accused is then sane. The question depends upon the interpretation of Section 13441-1, General Code, which section will be found quoted in the majority opinion. The syllabus pronounced by the majority states that the court is required forthwith to make the inquiry if
 
 during the trial
 
 it comes to the notice of the court that the accused is not then sane. I find no such authority in the statute. The statute is very plain in enjoining that it is only when a showing is made, either before or after the trial, that the court shall proceed to examine the question of
 
 *142
 
 the present sanity of the accused. This pronouncement on the part of the majority of this court makes an addition to the statute which the Legislature certainly did not declare, although it is fair to suppose that that feature of the case must have been in contemplation. A study of that section in connection with other related sections leads to the inevitable conclusion that the entire purpose of those sections was to create a more orderly proceeding for the determination of the sanity or insanity of the accused than the procedure which has heretofore prevailed. Heretofore the accused was not required to give the state any notice that the defense of insanity would be made, either relating to the mental condition of the accused at the time of the commission of the offense or at the time of trial. It was' to avoid this situation and to permit the state to make preparation for such a defense that these amendments were enacted. Another section of the statute requires that, if it is expected to defend on the ground that the accused was not sane at the time of the commission of the offense, that defense must be pleaded in writing before the beginning of the trial. The defense that the accused was not sane at the time of trial may be asserted either before or after the trial, but, if the very plain language of the section is not to be disregarded, and if we are not to add something to the statute which the Legislature did not assert, and as we view it did not intend to assert, then the inquiry into the present sanity of the accused must either be asserted before the trial or the inquiry postponed until after the trial.
 

 If it is urged that there can be no legal inquiry as to the guilt of an accused person who is mentally
 
 *143
 
 incompetent, it may be answered that that is one of the things which must be determined, and, unless the alleged mental incapacity had its inception after the beginning of the trial, no reason is apparent why counsel representing the accused should not be required to comply with the plain provisions of the statute.
 

 The majority opinion correctly states that during the progress of the trial, and after the state had rested, counsel for the accused requested a continuance, and stated that “he was insane at the time he committed the crime and he is insane now. ’ ’ There was not even a suggestion that any change had occurred in his mental condition. Counsel was asserting a condition which he claimed had existed for months and was still continuing. If he was insane when he committed the offense, it was the duty of counsel to plead that defense in writing before the commencement of the trial. If counsel believed that he continued to be insane, and desired a trial of the issue of present insanity, that course was open either
 
 before
 
 or
 
 after
 
 the trial upon his presenting “a certificate of a reputable physician to that effect.” Having provided a specific method of bringing that matter before the court, it will not be open to counsel to proceed in some other manner not authorized. Manifestly no evidence of insanity would be convincing without the support of the evidence of a physician. It cannot be claimed, therefore, that the requirement of presenting a physician’s certificate imposes a burdensome condition upon the accused or his counsel. It would be the most simple and effective method, and anything less effective should not be countenanced in a court of justice. It is true
 
 *144
 
 that the statute authorizes the court to act “if it otherwise comes to the notice of the court.” Can it be said that this general provision abrogates and nullifies the specific provision?
 

 In either event, and in any event, the action of the court must be invoiced either before or after the trial and not during its progress.
 

 Counsel for the accused, in making preparation for the defense, must have, learned of his mental deficiency, and there is no hardship in requiring them to apprise the court of what they have found before the trial begins. Surely nothing substantial to the accused is gained by postponing the presentation of a certificate of a physician until after the trial begins. The only apparent advantage which can accrue to the accused is that suspension of the trial after it has been begun causes a confusion of issues which might result to an advantage solely because of such confusion. An accused person, sane or insane, must necessarily depend for the character of his defense upon his counsel. It is not unfair to him and it is only fair to the state that counsel be charged with that responsibility and that the responsibility be discharged before the time of the beginning of the trial.
 

 The amendment to the statute imposes a rule of practice and procedure. If the meaning of the statute is clear, as it certainly seems to be, there can be - no question of the power of the Legislature to make such rule of practice and procedure. Comparatively recent legislation has been enacted by a number of states of the Union, notably the states of Alabama, Wisconsin, California, Colorado, Indiana, and Washington, establishing more orderly practice and pro
 
 *145
 
 cedure in criminal cases where insanity is pleaded as a defense. The constitutionality of these statutes has been upheld in the following cases:
 
 Perry
 
 v.
 
 State,
 
 87 Ala., 30, 6 So., 425;
 
 Bennett
 
 v.
 
 State,
 
 57 Wis., 69, 14 N. W., 912, 46 Am. Rep., 26;
 
 People
 
 v.
 
 Hickman,
 
 204 Cal., 470, 268 P., 909, 270 P., 1117. These cases do not directly involve the same issues as are involved in the ease at bar, but they uphold principles closely related thereto.
 

 The language of the statute being clear, it ought to be observed, unless the Legislature was without power to enact it; that is to say, the trial should not be suspended unless the Legislature has authorized such suspension; or, to state the proposition conversely, the statute having only authorized the inquiry before or after trial, and not having authorized it during the suspension, the court is without power to order the suspension in order to make the ancillary inquiry.
 

 It is a matter of general knowledge because a matter of general notoriety, if not, in fact, a matter of general judicial scandal, that a number of cases in recent years have occupied the time of courts and juries for periods of many weeks while high-powered alienists and mental specialists have provided much entertainment with little real enlightenment upon insanity issues. Such a spectacle is deplorable when it is the main issue to be determined. It would be intolerable if tried as an ancillary issue, while the main issue is suspended and the regular jury kept in confinement awaiting its termination.
 

 It is noteworthy that the majority of the court do not challenge the constitutionality of this statute in any of its provisions. If the statute is valid, it should not be nullified by interpretation.