[Crim. No. 4370.   Second Dist., Div. Two.   Dec. 20, 1949.]

THE PEOPLE, Respondent, v. A. F. LUSE, Appellant.

Morris Lavine and Russell Parsons for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

McCOMB, J.—From judgments of guilty on (1) three counts of forgery and (2) twelve counts of violating section 115 of the Penal Code[1] after trial before a jury, defendant appeals.

The record being viewed pursuant to the rules set forth in *People* v. *Pianezzi*, 42 Cal.App.2d 270, 277 [108 P.2d 685], discloses these facts: Defendant altered without authority three stock certificates of the Mo-Lo Corporation and filed or caused to be filed for record more than 12 false or forged documents.

*Questions:* First: *Was there substantial evidence to sustain the judgments of guilty?*

This question must be answered in the affirmative.

### COUNTS ONE TO THREE INCLUSIVE

Witnesses testified that in April, 1941, defendant caused the Mo-Lo Corporation to issue to his wife, Mrs. Gladys P. Luse, three stock certificates in which her name appeared as the owner. She placed these stock certificates in her safe deposit vault where they remained until the first part of 1944. She then noticed that they were not in her box and learned upon inquiry from defendant that he had removed them and taken them to his office. Difficulties having arisen between defendant and his wife she employed an attorney and on November 14, 1944, defendant delivered to the attorney the three stock certificates just mentioned which showed Gladys P. Luse as the owner. Defendant admitted that after he had received

---

[1]Section 115 of the Penal Code reads: ''Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, or registered or recorded under any law of this state of the United States, is guilty of felony.''

the certificates back from Mrs. Luse's attorney he scratched out the name of Mrs. Luse on each of the stock certificates and inserted in lieu thereof the name of his mother. Mrs. Luse testified that she had never authorized defendant to make any changes in the certificates.

Clearly the foregoing constitutes substantial evidence to sustain the jury's verdict of guilty on counts one, two and three.

### COUNTS FOUR TO FIFTEEN INCLUSIVE

■ An examination of the record discloses that defendant recorded or caused to be recorded more than 12 documents each of which was false. It would serve no useful purpose to detail each and every document and the method used by defendant to obtain or create it. It is sufficient to give a typical example of the way defendant operated, to wit:

Witness King testified that he had a conversation with defendant relative to People's Exhibit 4, which purported to be a power of attorney and assignment signed by defendant's wife, Gladys P. Luse, and which document was filed October 5, 1945, in the official records of Los Angeles County. The witness testified that defendant referred to this document as "his masterpiece," and that he explained to the witness how he had fraudulently obtained his wife's signature to the document and how he had obtained through fraud the notary's acknowledgment to the instrument.

Defendant's wife stated that she first saw People's Exhibit 4 when it was shown to her in court, that she had never executed any assignment of her interest to defendant, and that she had refused his request for a written power of attorney.

Second: *Was there substantial evidence to show that the crimes were committed in Los Angeles County within three years prior to the filing of the informations?*

This question must likewise be answered in the affirmative. The informations were filed March 13, 1947.

### COUNTS ONE TO THREE INCLUSIVE

■ The record discloses that on December 4, 1944, defendant's attorney stated to counsel for Mrs. Luse that the stock certificates stood in her name. Therefore the alteration which defendant admits having made took place subsequent to that date, which was within three years before the date of the filing of the information.

### COUNTS FOUR TO FIFTEEN INCLUSIVE

Each of 12 forged instruments was filed in the official records of Los Angeles County on or subsequent to June 25, 1945, and the law is settled that the statute of limitations commences to run from the date the document is filed for record and not from the date the instrument was drawn. (*People v. McPherson,* 6 Cal.App. 266, 269 et seq. [91 P. 1098].)

It is clear that the statute of limitations had not run on the offenses charged in counts four to fifteen inclusive.

Third: *Is section 1095 of the Penal Code[2] constitutional?*

This question must be answered in the affirmative. In *People v. Jones,* 123 Cal. 65, 69 [55 P. 698], the court approved the section and the action of the trial court thereunder limiting argument to one counsel. *People v. Fair,* 43 Cal. 137, 152, also points out that such procedure has been utilized since 1850. In *People v. Hickman,* 204 Cal. 470, 478 [268 P. 909, 270 P. 1117], the court held that "[t]here is nothing in the fourteenth amendment to prevent a state from adopting reasonable regulation of procedure in relation to jury trials." The court also stated that the state "is not tied down by any provision of the federal constitution to the practice and procedure which existed at common law" but "it may avail itself of the wisdom gathered by experience to make such changes as may be necessary." The courts having utilized the limitation in the past, and its use having been approved by the Supreme Court, it may not now be attacked on the ground of constitutional invalidity. In the Hickman case (*supra*) the court on similar reasoning refused to hold unconstitutional a procedural statute relating to criminal trials. The recognition, utilization and approval by the courts in the past of section 1095 of the Penal Code is sufficient attestation of its constitutionality. Therefore the trial judge in the instant case did not commit prejudicial error in refusing to allow defendant to be represented before the jury by more than one counsel.

Fourth: *Did the trial court commit prejudicial error in denying defendant's motion for a new trial?*

This question must be answered in the negative. Since the

---

[2]Section 1095 of the Penal Code reads: "If the indictment or information be for an offense punishable with death, two counsel on each side may argue the cause to the jury. If it be for any other offense, the court may, in its discretion, restrict the argument to one counsel on each side."

same questions were urged on the motion for a new trial as defendant presents upon the appeal from the judgments and which we have held to be without merit, there was no error.

Affirmed.

Moore, P. J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1950. Carter, J., and Schauer, J., voted for a hearing.