JOSEPH C. MARINO *v.* STATE OF MARYLAND
[No. 12, October Term, 1936.]

**106**

*Decided November 19th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Allan Eli Cohen* and *C. Arthur Eby,* for the appellant.

*Hilary W. Gans, Deputy Attorney General,* with whom were *Herbert R. O'Conor, Attorney General,* and *Elmer J. Hammer, Assistant State's Attorney for Baltimore City,* on the brief, for the State.

SHEHAN, J., delivered the opinion of the Court.

Joseph C. Marino, the appellant, was presented in the Criminal Court of Baltimore City. The indictment under which he was charged contains four counts. The first is for the forgery of the name of Elsie Vogtman as indorser on the back of a check of the New York Life Insurance Company, payable to her, for $700.03. The second is for the uttering of this check with the alleged forged indorsement. The third is for the larceny of this paper writing. The fourth is for obtaining money under false pretenses, through the instrumentality and in consequence of this forgery.

There was a motion to quash this indictment on the ground of misjoinder of the several counts. This motion was denied. A demurrer was then filed to the indictment, and every count thereof, and it was overruled. These rulings constitute the defendant's first and second

assignments of error, of which there are forty-five. Forty-three exceptions were reserved to rulings of the court on the evidence, excepting Nos. 22 and 34; which relate to remarks of the trial judge. The first two rulings present little difficulty. The first raises the misjoinder of the counts, and the second the insufficiency of certain of these counts.

It has been the practice in the courts in this State to permit the joinder of counts of this character. The rule is that allied crimes may be variously charged in several counts in the same indictment to meet variation in the proof, and this is all that was done in the indictment. *State v. McNally,* 55 Md. 559; *Green v. State,* 170 Md. 134, 183 A. 526. In this case the forgery count is well stated, as is the uttering of the forged instrument. They are dependent upon the same facts and grow out of the same transaction, and there is no doubt that the lower court, in its rulings on these counts, committed no error.

On the third and fourth counts there was a verdict of not guilty; in fact the verdict of not guilty on the third count was confessed by the State; therefore it cannot be said that there was prejudicial error with regard to these two counts. As to the joinder of these counts, growing out of the same facts and constituting crimes of the same general character, this falls within the rule laid down in numerous cases in this state and by text-writers. The general rule here and in other states is that felonies and misdemeanors, forming a part of the development of the same transaction, may be joined in one indictment, and this is especially true where the misdemeanor is in the nature of a corollary to the felony, as in forgery and uttering. *Wharton's Criminal Practice* (10th Ed.), secs. 335-342. In this state the point has been directly decided in the case of *Lyman v. State,* 136 Md. 40, 109 A. 548. There the indictment contained three counts, forgery, uttering, and false pretenses. A motion to quash and a demurrer were filed and overruled, and on appeal the conviction was sustained.

The case of *Brashears v. State,* 58 Md. 563, is directly

in point; and in the recent case of *Simmons v. State,* 165 Md. 155, 167 A. 60, this subject of misjoinder was again reviewed at length, and we need not give it any further consideration, other than to refer to that case and the numerous citations therein given, and also to the cases of *Curry v. State,* 117 Md. 587, 83 A. 1030; *Reynolds v. State,* 141 Md. 637, 119 A. 457; *State v. McNally,* 55 Md. 559; *Toomer v. State,* 112 Md. 285, 76 A. 118; *Bowser v. State,* 136 Md. 342, 350, 110 A. 854; *Weeks v. State,* 126 Md. 223, 94 A. 774; also 9 *Corpus Juris* 1056.

But the appellant has urged that the person intended to be defrauded by the forged instrument and its uttering are not sufficiently named or described in the indictment.

This contention is made upon authority in *State v. Blizzard,* 70 Md. 385, 17 A. 270, and *Armacost v. State,* 133 Md. 289, 105 A. 147; and again it is urged by the appellant that, in an indictment for uttering a forged instrument, the name of the person to whom the paper was offered or passed must be alleged. 12 *R. C. L.* 156. We think that this can be disposed of by reference to the bill of particulars, wherein it is stated:

"That on or about October 11, 1935, the above named defendant received from the New York Life Insurance Company in Baltimore, where he was employed, a check of the New York Life Insurance Company, said check being in the sum of $700.03 payable to Elsie Vogtman, for the purpose of delivering the said check to the said Elsie Vogtman to whom it belonged.

"That the said Marino instead of delivering said check to the said Elsie Vogtman, endorsed or caused to be endorsed her name on the back without her knowledge or authority, and presented the same to one Nathan Rief, who gave the said sum of $700.03 to the said Marino, which said sum was retained by the defendant and none of which was ever received by Elsie Vogtman."

These particulars were given to the defendant before he went to trial, and a demurrer could have been filed to the indictment, as amplified by the bill of particulars, and thus the question of its sufficiency disposed of before the

trial. The defendant, having elected not to pursue this course, cannot now be heard to question the legality of the indictment. The Code provision, article 27, section 558, also disposes of these questions. It is there provided that, "It shall be sufficient in any indictment for forging, uttering, disposing of, putting off or passing any instrument whatsoever, or for obtaining any property by false pretenses, to allege that the defendant did the act with the intent to defraud, without alleging the intent of the defendant to be to defraud any particular person."

The twenty-second and thirty-fourth exceptions are to an alleged misconduct of the court in making certain statements in the presence of the jury. A question arose as to whether Mrs. Vogtman had conversed over the telephone with Mrs. Marino, the wife of the accused. A number of general questions, without fixing the time and place, were propounded to Mrs. Vogtman. The defendant's counsel persisted in asking general questions as to such conversation, not had in the presence of the accused, to which there were objections, principally on the grounds that such questions could only be asked for the purpose of impeachment, if at all, and for that purpose were improper, in that no time and place as to the conversation was designated. The court stated, "If you claim this woman had any conversation with Mrs. Marino subject to this transaction in which anything was said which is relevant to the case, of course, it would be proper to ask it, but you cannot ask it by covering the whole earth and the whole calendar for an indefinite period of time." To this statement exception was taken.

In the thirty-fourth exception the court stated: "I cannot see the relevancy of this; objection sustained. I am not going to listen to any argument on that." To these statements the defendant objected and excepted.

If the defendant had desired to reserve these questions, he should have moved the court to withdraw a juror, and declare a mistrial because of the prejudicial effect of the remarks of the court, and, if the court had refused, reserved an exception to the refusal. However, under

the circumstances, there was no ground whatsoever for an exception. The court had the duty to require questions to be properly framed and the right to refuse to have further argument or discussion in the matter, and the mere refusal to do so did not constitute reversible error.

Much latitude in the examination was allowed in this case, and much persistency was exercised by the defendant's counsel, and such restrictions must necessarily have been placed thereon as would guarantee a fair and orderly trial. Just what manner, conduct, and persistency were exercised by counsel we cannot say, but the trial court could better determine what was necessary for the conduct of the trial in an orderly and efficient manner, than we can.

The rule in this behalf has been stated by this court in the case of *United Rys. & Electric Co. v. Carneal,* 110 Md. 211, 232, 72 A. 771, 775. It was there stated: "It is undoubtedly true that a trial judge because of his high and authoritative position should be exceedingly careful in any remarks made by him during the progress of a trial either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury." See, also, *Sandruck v. Wilson,* 117 Md. 624, 629, 84 A. 54.

The above statements of the court do not constitute an expression as to the existence or not of any fact, its weight or credibility, but only relate to the admissibility of evidence, and to some extent, the reason for its rejection; and the refusal to hear further argument on a question of evidence.

The remaining exceptions concern the admissibility of evidence as it relates to testimony sought to be introduced for the purpose of sustaining the contention of the defendant that he had express authority to endorse the check, and to discredit some of the prosecuting witnesses with regard to the testimony they had given. In this

case, as presented, there is one principal question, that being whether the appellant, Joseph C. Marino, had direct authority from Elsie Vogtman to indorse her name across the back of the check. This he affirms, and she positively denies.

The third, fourth, fifth, sixth, and seventh exceptions present no reversible error. There is no contention that the check was not delivered to the defendant by the New York Life Insurance Company, to be delivered by him to Mrs. Vogtman. This delivery, as testified to by Mr. McPherson, is admissible, but what happened, after the alleged forgery and uttering occurred, between the company and Mrs. Vogtman or her representatives, does not seem to throw any light upon the question that would be of advantage to the defendant, who admits he received the check, caused it to be indorsed, and received the cash upon it. The repayment of the $700.03 to Mrs. Vogtman by the company would not excuse the defendant from his alleged misconduct, and the rulings on the testimony on this and other points in relation to the testimony of Mr. McPherson are not error.

Exclusive of the seven rulings above referred to, all of the forty-five exceptions relate to the admissibility of testimony bearing upon the single question of authority to indorse the check in question, and to the credibility of witnesses. It is true that in a case of this character some latitude should be allowed in cross-examination, in order to present to the jury a clear picture of the situation as it existed at the time the alleged crime or crimes were committed. If the defendant had authority to sign Elsie Vogtman's name on the check and to utter it, that would create an agency which would not involve him in forgery. If, on the contrary, without authority he did indorse and utter the check, receive the proceeds of it and appropriate it to his own use, and she in nowise authorized it, as alleged in the indictment and in the bill of particulars, this was evidence of his guilt under the first two counts of the indictment. The decision in the case depends largely upon the credit to be given to

the testimony of Elsie Vogtman and Joseph C. Marino, the accused. The position of the parties and their social and business relations with each other at the time of the alleged crime and the related past all become material and important facts to be laid before the jury, so far as they give color to or are in support of their respective statements. It is quite impossible to review every one of the exceptions, but they may be classified as to their design and purpose, and so considered, and even though some of the rulings may be questioned, it still remains that the jury had from such testimony as was admitted ample evidence to afford a clear picture of the attitude of these parties at the time of the alleged forgery, and at the time of the indictment and trial. So nothing was ultimately excluded to the prejudice of the accused. It does not appear that the court so curtailed cross-examination as to prevent the jury from having an exact understanding as to what was involved in the case, and what motives or designs actuated the principal prosecuting witness or other witnesses, or the accused, in pursuing their respective courses of conduct. It is obvious that Mrs. Goldinghorst (née Vogtman) would far more likely give to a friend, or associate in business, authority to indorse an instrument for her, than she would a stranger, and it is obvious that an effort was being made in the cross-examination, and in parts of the examination in chief, to show that earlier there was very close friendship and association between Mrs. Goldinghorst (née Vogtman) and the defendant, and that they were partners in the business of making bets on races and the ownership of race horses, and both lost what they had invested. Then an estrangement and deep-seated enmity arose between them. All this was clearly presented to the jury, and it bcame its province to consider and weigh the facts gained from the confusion that these accusations and charges threw around them, and to determine to which of these two parties, the accused or Mrs. Goldinghorst, credence should be given. The lengthy statements of Mrs. Goldinghorst (Vogtman) near the close of her cross-

****

examination, after she had proposed to tell the whole story, and counsel for the defendant had invited her to do so, disclosed many facts that she had previously been prevented from stating by adverse rulings. She gave at length her versions of their transactions and of business and social relations that had and did then exist between them. She accused him of dishonesty, theft, and personal abuse. She denied that authority had been given him to sign her name on the check. She disclosed the banking institutions from which she had withdrawn the money, amounting to approximately $8,000, which she claims she intrusted to him for the purpose of making investments, and payments of money for her, and which she said he did not make. She detailed the transactions with the New York Life Insurance Company, and those with Mr. Eby and Mr. Price. She explained the situation in regard to the comparatively small sums of money she had received from the accused, and testified to other facts and circumstances which had been the subject of inquiry in earlier cross-examinations, such as the inquiry as to her jewelry, which she claimed had been wrongfully taken from her, much of this testimony having been previously excluded.

These, and other facts presented by her in her comprehensive statements, we think so supplemented her testimony as to give to the jury all that could be reasonably expected. There was enough feeling shown against the defendant to discredit or weaken her testimony had the jury thought fit to so accept it. The jury might have held that this treatment to which she testified, and the sharp conflict between them, so influenced her testimony that it was not entirely worthy of belief, but apparently the jury did not so regard it.

The defendant claims that this estrangement led to the repudiation of his authority to indorse the check and to use the money in the payment of bills that had been contracted by or for the partnership, and that these facts should be without restriction brought to the attention of the jury. These facts were presented to the jury, and no material fact was excluded. The general

rule, as laid down in Wharton's Criminal Evidence is this (section 1281): "The trial court must confine the examination of a witness to a material inquiry. A party or his counsel may not properly ask a witness questions, the answers to which can only bring out immaterial or incompetent testimony, and questions designed to elicit testimony which is irrelevant to any issue in the case on trial, should be excluded by the Judge even though opposing counsel have been allowed, without objection, to introduce evidence upon the subject. The Court may accordingly so limit the examination of a witness as to confine the inquiry to relevant matters and should interfere with a useless and irrelevant examination of a witness in order to prevent a waste of time and the distraction of the jury's attention." Section 1295 also states: "The cross-examination of witnesses and the method, conduct, character, scope, range, extent and limitations of such cross-examination are within the trial Court's discretion, which will not be interfered with in the absence of an abuse thereof."

We think this rule has been followed in this case. The jury had a large amount of testimony, as is evidenced by the record on all the points to which reference has been made. As to the testimony which tends to impeach, or to discredit Mrs. Goldinghorst (Vogtman), much of this proposed testimony was on collateral matters, relating to facts that would not have been admissible in chief. There are other questions in which the time and place of the alleged conversations or statements were not laid, and were consequently improper, and did not form a basis for contradiction. Upon review of the entire situation as it developed at the time of the trial, we think there was no reversible error; that the defendant had a fair trial. It was the province of the jury to decide as to his guilt, upon all the facts and circumstances, and as to the law, of all of which the jury is the judge.

From what we have said, and for the reasons above given, the judgment of the lower court must be sustained.

*Judgment affirmed, with costs.*