ELMER *v.* STATE

[No. 147, September Term, 1964.]

*Decided May 7, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-
MOND, HORNEY and SYBERT and CARTER, C. J., Chief Judge of
the Second Judicial Circuit, specially assigned.

*Donaldson C. Cole, Jr.,* for appellant.

*Roger D. Redden, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Walter M. Baker, State's Attorney for Cecil County,* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court. Dissenting opinion by HAMMOND, J., at page 11, *infra.*

Sentenced to five years in the House of Correction after being found guilty of assault and battery by a jury in the Circuit Court for Cecil County, John Davidson Elmer appeals.

The State's evidence at the trial tended to show that Elmer had joined with several other young men in beating the complaining witness, a man in his fifties, in the early morning hours of January 18, 1964, across the street from a tavern near Elkton, Maryland. The same incident was before this Court in the case of *Vandegrift v. State,* 237 Md. 305, 206 A. 2d 250 (1965).

Although the appellant claims several errors occurred in the trial, we find it necessary to decide only one of the issues, *i.e.,* whether the trial judge committed prejudicial error when he declared, in the presence of the jury, that a certain witness for the State was hostile.

The State called as a witness one Richard Davis, who had been mentioned previously in the trial as having been one of the men who had participated with the appellant in the attack upon the prosecuting witness. Davis had been indicted along with Elmer but before the latter's trial the State had confessed not guilty as to Davis. During the course of the direct examination of Davis, the judge "declared" him to be hostile, in the presence of the jury, under the following circumstances:

"Q. [by the State's Attorney]: You didn't hear Richie Vandegrift [one of the accused] say, 'I will stop him from calling the police'?

"[Defense Counsel]: Your Honor, I object to this.
"The Court: Why?
"[Defense Counsel]: Because he can't lead the witness, and he has even gone one step further.

"The Court: This is his witness. Are you taken by surprise at what this man is saying?

"[Defense Counsel] : No.

"The Court: I am asking him [the State's Attorney]. Wait a minute.

"[State's Attorney] : Your Honor, I am not taken by surprise, but he is a hostile witness and I would like to have him declared as such.

"The Court: *I will declare him as such.* Go ahead. (Emphasis supplied.)

"[Defense Counsel] : I object, your Honor.

"The Court: All right, you have your objection.

"[State's Attorney] : Q. You didn't hear Vandegrift say he was getting him, he would stop him? A. No, sir.

"Q. Nothing of that nature? A. All I heard Richie say, 'Somebody better help this man. I will help him.' That is all I heard.

"Q. And you are going to stick to that, are you? A. That is all I heard, yes, sir.

"[State's Attorney] : Okay. You can have him."

Defense counsel did not make a motion for a mistrial, or a motion to strike out the judge's declaration that the witness was a hostile one and to instruct the jury to disregard it, and it has been suggested that the failure to make either of these motions prevents our review of the question as to the prejudicial effect of the judge's remarks. There can be little doubt that the making of one, or both, of these motions by defense counsel would properly have preserved the question involved in the above objection for review. We have so stated on several occasions. See, for example, *Bryant v. State,* 207 Md. 565, 585, 115 A. 2d 502 (1955).

But, in order to determine whether these are the only methods, under all circumstances, of preserving the question of allegedly improper remarks of the trial judge for appellate consideration, we must consider our previous decisions and our present Maryland Rules.

We do not deem it necessary to go back earlier than the case

of *Sandruck v. Wilson,* 117 Md. 624, 84 Atl. 54 (1912), which involved a civil proceeding. This Court stated a trial judge should be careful to avoid expressing in the presence of the jury an opinion as to the existence of any fact which should be left to their determination, but held that remarks of the trial judge which plainly indicated that he thought the plaintiff should recover were not prejudicial in that particular case, as the judge could properly have instructed the jury to return a verdict for the plaintiff.

In *Lee v. State,* 163 Md. 56, 58, 161 Atl. 284 (1932), the Court noted that "the appeal has not been perfected in entire compliance with the rules governing appeals to this court," but went on to reverse, holding that the appellant had been denied a constitutional right to equal protection of the laws.

One of the contentions raised in *Marino v. State,* 171 Md. 104, 187 Atl. 858 (1936), was a claim that the trial judge had made improper statements in the presence of the jury. The Court stated that if the defendant desired "to reserve these questions, he should have moved the court" to declare a mistrial. However, the Court proceeded, after stating that the trial judge "should be exceedingly careful in any remarks made by him * * *," to consider and decide the question, stating further "the above statements of the court do not constitute an expression as to the existence or not of any fact, its weight or credibility, but only relate to the admissibility of evidence, and, to some extent, the reason for its rejection * * *." (p. 110 of 171 Md.).

In 1938, the case of *Kirschgessner v. State,* 174 Md. 195, 198 Atl. 271 (1938), was decided; more will be said of this case later.

Chief Judge Bond wrote the opinion in *Cohen v. State,* 179 Md. 696 (where it is unreported), 16 A. 2d 878 (where it is reported) (1940). There, reversible error was claimed in a remark made by the trial judge. The record failed to reproduce the complained of incident with clarity; however, the Court assumed "some damage" resulted. The opinion pointed out that no motion to strike out the remark, to warn the jury to disregard the same, or to declare a mistrial had been made, and stated, "Correction by one of them must be attempted to en-

able this court to set aside a judgment because of an improper remark." (p. 879). Although stating this as a general rule, the Court was careful to say: *"We do not pass on available methods of correcting any interference by a court that might amount to a denial of due process of law."* (p. 880). (Emphasis supplied.) It will be noted that this decision was rendered prior to the adoption of our present rules of court when formal bills of exceptions had to be presented in order to obtain a review of lower court rulings by this Court. It will also be noted that "available methods" of correcting a denial of due process were not included within the scope of the ruling laid down.

*Lubinski v. State,* 180 Md. 1, 22 A. 2d 455 (1941), was decided the following year. Again, remarks made by the trial court were challenged. The Court stated that there were "no exceptions to any of these remarks, nor was there any motion made as a result of them," hence their propriety was not properly before the Court for review. However, the opinion noted the exception named in *Cohen, supra,* relative to "available methods of correcting" any denial of due process, and went on to say: *"We find nothing in the rulings on the evidence * * * or in the remarks of the trial court,* which would justify us in concluding there has been any denial of due process of law, *or any infringement on the constitutional rights* of the appellant." (Emphasis supplied.) (pp. 9-10 of 180 Md.)

This case seems to have been the last one (touching the question involved here) decided before the adoption on November 1, 1945, of Court of Appeals Rule 17, the forerunner of present Maryland Rule 522, which applies to criminal proceedings by virtue of Rule 725 f. At the time of the trial below, Rule 522 a and b read as follows:

"a *Formal Exceptions Unnecessary.*

A formal exception to a ruling or order of the court is unnecessary.

"b *Action Desired or Objection.*

For purposes of reconsideration by the trial court or review on appeal, it is sufficient that a party at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires

the court to take or his objection to the action of the court, and unless requested by the court it shall not be necessary to state the grounds therefor."

Since the adoption of this rule, we have decided several cases involving the question under consideration, but none seems to have dealt explicitly with the matter as to how Rule 522 relates thereto.

In *Brown v. State,* 203 Md. 126, 100 A. 2d 7 (1953), no objection was made to the court's action (challenged remarks of the trial judge); hence the question was not properly before the Court of Appeals.

In *Bryant v. State, supra* (207 Md. 565, 115 A. 2d 502), the Court repeated the propriety of making one or more of the motions mentioned above when complaint is made of remarks made by the trial judge. The opinion stated that "The degree of severity of a trial judge's rebukes of an attorney" is left to the discretion of the trial judge *"as long as they do not prevent a fair and impartial trial."* (Emphasis supplied.) The Court held that the record failed to show that the actions and statements of the judge were such "as to deprive him [the defendant] of a fair and impartial trial." (p. 585 of 207 Md.).

The trial judge in *Wolfe v. State,* 218 Md. 449, 146 A. 2d 856 (1958), attempted to assist the defendant, who was not represented by counsel; however, we were of the opinion that certain of the remarks made by the trial court in the presence of the jury, in doing so, were, in fact, prejudicial. Judge Horney, for the Court, pointed out that "Generally, the prejudicial effect of improper remarks may not be raised on appeal unless preserved by an appropriate objection" (a motion to declare a mistrial or a motion to strike out the remarks), but, under the circumstances there prevailing, we held that "we must of our own motion take cognizance of and correct the plain error * * * even though such error may not have been properly includible in the assignment of errors * * *." (p. 455 of 218 Md.). In other words, we concluded that the remarks made by the judge below denied the appellant due process of law.

Judge Hammond, for the Court, in *Brown v. State,* 220 Md. 29, 39, 150 A. 2d 895 (1959), stated: "There was an objec-

tion to the questions [propounded by the court], which was overruled. Appellant [who was represented by counsel] did not ask that the jury be instructed to disregard the questions and answers, nor did he move for a mistrial, which are the steps we have said should be taken in such a situation. [Citation.] Nevertheless, we feel constrained to say that the questions asked were clearly improper."

Again, in *Rowe v. State,* 234 Md. 295, 302, 199 A. 2d 785 (1964), we held: "Even though a question as to the failure of the trial court to advise the jury with respect to not returning a verdict on the indictment in the event of a finding of insane *now* was not included in the assignment of errors, we think we must, under the unusual circumstances of this case, take cognizance of the plain error *sua sponte."* (It will be noted the question in this case did not involve allegedly improper remarks of a trial judge.)

We have set forth the holdings in the above cases and Rule 522 a and b in order that we may consider our present question in proper perspective. We think the decisions before the adoption of Rule 522 clearly point out that, prior thereto (when formal bills of exceptions were required in order to obtain appellate review), the general rule was that the proper mode of preserving for appellate review challenged remarks made by a trial judge was by a motion for a mistrial or a motion to strike out the remarks and to warn the jury to disregard them; and, upon denial of such motion, or motions, to take exceptions to the court's rulings. To this general rule there was an exception, namely, when the record clearly showed that the accused had not had a fair and impartial trial, and thereby was denied due process of law. Although specifically noting this exception, the decisions (prior to the adoption of Rule 522) did not spell out the "available methods" to be used to obtain appellate review when the trial resulted in a denial of due process. However, in *Wolfe v. State, supra,* we held, as stated above, that this Court should raise the question *sua sponte.* See also *Apple v. State,* 190 Md. 661, 667-668, 59 A. 2d 509 (1948).

We mentioned above the case of *Kirschgessner v. State* (174 Md. 195). In that case the State, having failed to get responsive answers from a witness, asked for and obtained, in the

jury's presence, a bench warrant for him on a charge of perjury. After a forty-five minute recess the witness was brought into court in the sheriff's custody and resumed the stand, over the defendant's objection, and the bench warrant was dismissed, again over the defendant's objection. In spite of the objections, this Court ruled that "the question of prejudice to the defendant's constitutional right to a fair and impartial trial" had not been preserved for appellate review, since no motion for a mistrial had been made (p. 202 of 174 Md.). With due deference to our predecessors, we find it impossible to square the holding with the present-day concept of due process of law; therefore, to the extent that this opinion conflicts therewith that case is hereby overruled.

We think, under the unusual circumstances here presented and the unquestionably harmful effects of the judge's remarks in the presence of the jury as we point out in more detail below, the accused was not afforded a fair and impartial trial and he was, therefore, denied due process of law, which, under the authorities cited above, would call for our review of the propriety of the court's remarks, even if no objection had been made thereto.

However, there was an objection made as noted in the colloquy set forth above. Rule 522 explicitly states that formal exceptions "to a ruling or order of the court" is no longer necessary, but for purposes of "review on appeal" it is sufficient that a party "at the time [of] the ruling * * * makes known to the court the action which he desires the court to take or his objection to the action of the court." The rule is couched in simple and easily understood terms, and its meaning is clear: it is no longer necessary, in order to reserve for appellate review, for a party to take formal exceptions to rulings of the court during the course of a trial, provided the party makes known to the court "his objection to the action of the court," or "the action which he desires the court to take." One of the primary purposes of this Rule was to simplify procedure by doing away with unnecessary and outmoded formalities, thereby saving time in the trial of causes and avoiding unnecessary expense.

Although there may be a possible question as to whether the

objection in the instant case was directed specifically to the remarks of the judge when he said "I will declare him as such. Go ahead," or to the judge's ruling that the State's Attorney would be allowed to ask leading questions, the objection followed the judge's remarks immediately and the doubt, if any, relative thereto should, we think, be resolved in the appellant's favor. Therefore, we conclude that the question of the propriety of the remarks made by the trial court in the presence of the jury is properly before us for review under Rule 522.

The court's declaration, in the presence of the jury, of the hostility of the State's witness, Davis, clearly prejudiced the appellant's right to a fair and impartial trial. As the case developed, its outcome depended almost entirely upon the credibility which the jury would accord to the witnesses for the State, on the one hand, and the witnesses for the defense (all of whom denied, in effect, that the appellant had participated in the attack upon the prosecuting witness), on the other. Of the State's witnesses, only one, Pinder, who was watching from a window of the tavern some 40 to 50 feet away, testified that the appellant was one of four men who tussled with the prosecuting witness, although he was unable to say which one or ones threw the prosecuting witness down and stomped on him. The prosecuting witness himself testified he did not know which of the men assaulted him. The other State's witnesses were unable to say they saw any physical contact between the appellant and the prosecuting witness. Davis' testimony was to the same effect. When the trial judge declared Davis a witness hostile to the State, after he had been called by the State and had given testimony favorable to the defense, the judge's remark clearly indicated his disbelief of the witness and unquestionably influenced the jury's appraisal of the credibility of the witness. It was, of course, the function of the jury alone, as the triers of the facts, to weigh and determine that factor. The rule in such cases was stated by this Court in *United Rys. Co. v. Carneal*, 110 Md. 211, at pp. 232-233, 72 Atl. 771 (1909), and quoted in *Marino v. State, supra* (at p. 110 of 171 Md.), as follows:

"* * * It is undoubtedly true that a trial Judge, because of his high and authoritative position, should

be exceedingly careful in any remarks made by him during the progress of a trial, either in passing upon evidence or ruling upon prayers, and should carefully refrain, either directly or indirectly, from giving expression to an opinion upon the existence or not of any fact, which should be left to the finding of the jury * * *."

The rule was applied in *Newton v. State,* 147 Md. 71, 86-88, 127 Atl. 123 (1924), where this Court held (upon objection, unaccompanied by any motion) that remarks made by the trial court in the presence of the jury which directly reflected upon the credibility of a defense witness constituted prejudicial error.

We think that the appellant must be granted a new trial. It should be noted that we are not deciding that the trial judge was wrong in concluding the witness was hostile, but rather that, even though his conclusion was correct, the prejudicial error was committed by not making the declaration of the witness' hostility (if any such declaration was felt necessary) out of the presence of the jury.

> *Judgment reversed and case remanded for a new trial; costs to be paid by Cecil County.*

HAMMOND, J., filed the following dissenting opinion.

I dissent because it is plain to me that out of the minuscule molehill of a routine and harmless ruling by a trial judge in the ordinary course of a criminal trial this Court has made a momentous mountain of reversible error, amounting to a deprivation of due process of law.

The Court says that what occurred is reviewable on appeal for two reasons—one, because it unconstitutionally deprived the accused of a fair trial and two, because his counsel preserved it for review by objecting to it under Maryland Rule 522. Taking the latter ground first, it seems to me inescapable from the record that, assuming that rule to be applicable, the only objection ever made or thought of by appellant's counsel was to the allowing of leading questions by the State's Attorney of

12

the witness Davis. When the State's Attorney first asked a leading question, defense counsel said: "* * * I object to this"; and when the court said "Why?" answered: "Because he can't lead the witness * * *." Then when the State's Attorney said of the witness: "* * * he is a hostile witness and I would like to have him declared as such," and the court said: "I will declare him as such. Go ahead" (clearly to continue to ask leading questions), defense counsel said again: "I object," (equally clearly, it seems to me), not to the judge's agreeing with the States' Attorney's characterization of the witness as hostile but to the permitting of leading questions. No one, including the majority, questions that the witness was hostile or the propriety of allowing leading questions of him.

Deprivation of due process is found by the majority because Judge Rollins, in ruling that "I will declare him as such," in response to the State's Attorney's statement that Davis was a hostile witness, destroyed or damaged prejudicially the credibility of the witness. To me this approaches, if it does not embrace, the fanciful. Of the State's witnesses only one gave support to the State sufficient to make a case for a jury to pass on. The others, of whom Davis was but one, all were obviously not sympathetic to the State's effort to convict and said from the stand as little as they could, and that reluctantly. But because a witness is reluctant to help the State or hurt the accused—in other words, is "hostile" to the State—does not necessarily mean that what testimony can be extracted from him is not to be believed. If this were so, the rule permitting the asking of leading questions of such a witness, the reason for and the aim of which is to elicit the truth, would be meaningless. It is not meaningless, any more than is the right to ask leading questions on cross-examination of a witness who has been produced by the other side. He, too, often is a "hostile" witness but this does not make his testimony on cross-examination incredible.

We pay lip service to trial by jury as a bulwark of the protection of individual rights, but judicial treatment of whether a particular jury has been influenced towards unfair determination of those rights often seems to proceed on the assumption, contrary to the theory on which the jury system is based

and supposed to operate, that the men and women on that jury lacked average intelligence, common sense, experience and judgment. There would seem no reason in the case before us to think the jury was led to believe that Judge Rollins was announcing that he thought the witness was not a truthful man and not to be believed. It must have been apparent to them that he was merely recognizing, as every one else in the court room by then must have, that the witness wanted to say as little as he could and that, therefore, the State, in an effort to overcome his hostility towards testifying, should be able to ask him questions which would require him to give information.

The claim that the passing remark of the trial judge made the trial unfair to the point of being unconstitutional under "the present-day concept of due process of law" (quite obviously meaning largely the concept now held by the Supreme Court and lower federal courts) would seem to rest on a foundation of sand.

Maryland has adhered generally to the much—and to me, justly—criticized rule that the trial judge should be only an umpire. For an example of that criticism, see 3 *Wigmore* (3rd Ed. 1940), Sec. 784. Many courts of other jurisdictions, including those of the federal judicial system, have taken the broader approach and have held that a nisi prius judge may express his views on the merits of the case, including the guilt of the accused in exceptional cases (where guilt is clear), and as to the bearing and weight of the testimony, including its credibility, provided he makes it unequivocally plain to the jury that they independently and for themselves must make the ultimate determination. This is the practice in Great Britian and Canada. *Chitty* (Brickwood's Packett on Instruction to Juries), p. 126, *et seq.,* says:

> "It is the practice for the judge at nisi prius not only to state to the jury all the evidence that has been given, but to comment on its bearing and weight, and to state the legal rules upon the subject and their application to the particular case, and to advise them as regards the verdict they should give."

New Jersey has adopted the English rule, *State v. Hummer,*

14

65 A. 249, as has California, *People v. Busby* (Dis. Ct. App. Calif.), 104 P. 2d 531; *People v. Ottey* (Calif.), 56 P. 2d 193, and apparently also Connecticut, Michigan and Pennsylvania, *Commonwealth v. Romano* (Pa.), 141 A. 2d 597; *People v. Lintz* (Mich.), 222 N. W. 201; *State v. Journey* (Conn.), 161 A. 515.

In *United States v. Murdock,* 290 U. S. 389, 394, 78 L. Ed. 381, Mr. Justice Roberts for the Court said (holding the rule not applicable on the facts) :

> "Although the power of the judge to express an opinion as to the guilt of the defendant exists, it should be exercised cautiously and only in exceptional cases. Such an expression of opinion was held not to warrant a reversal where upon the undisputed and admitted facts the defendant's voluntary conduct amounted to the commission of the crime defined by the statute. *Horning v. District of Columbia,* 254 U. S. 135, 65 L. Ed. 185, 41 S. Ct. 53."

See also *United States v. Link* (3rd Cir.), 202 F. 2d 592.

In *United States v. Kravitz* (3rd Cir.), 281 F. 2d 581, the judge said to the jury: "Let me say quite frankly to you that I do not believe Joseph Abrams [a witness] absolutely \* \* \*." Judge Goodrich for the Court held this was not reversible error.

This Court has said that a judge should not reflect on the credibility of a witness. *Newton v. State,* 147 Md. 71. As, has been noted, it is clear to me that Judge Rollins did not do this, but if it be assumed that he did and that, therefore, the error, if properly reserved for appellate review—as it was not— would amount to reversible error under Maryland law, this does not mean that the error deprived the accused of due process of law which requires reversal on the initiative of the reviewing appellate Court.

Judge Rollins' ruling that he recognized Davis as a hostile witness reflected only what was undeniably and obviously true. In his charge, Judge Rollins instructed the jury that anything he said as to the evidence was advisory only and not binding on them. If it be assumed that by the form of the trial judge's

ruling he conveyed to the jury the impression that he thought the witness to be unworthy of belief, this would not have constituted reversible error, much less come close to a denial of due process of law in a trial in the federal courts or those of many states. The phrase in Art. 23 of the Declaration of Rights of the Maryland Constitution, "That no man ought to be taken or imprisoned * * * or deprived of his life, liberty or property, but * * * by the law of the land" has been held to be synonymous with the words "due process of law" as used in the Constitution of the United States, *Slansky v. State,* 192 Md. 94, and the Court of Appeals is not at liberty to set up a Maryland concept of due process against controlling decisions of the Supreme Court. *Raymond v. State, ex rel. Szydlouski,* 192 Md. 602. The majority in the present case have treated a brief occurrence in a trial as constituting a deprivation of due process under Maryland law when it would not have been so treated under federal law.

I would affirm.