J-A25036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JESSE RYAN HILL | : | |
| | : | |
| Appellant | : | No. 1440 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 5, 2019
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0002742-2018

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED NOVEMBER 17, 2020**

Appellant, Jesse Ryan Hill, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his jury trial convictions for first-degree murder, possessing instruments of crime ("PIC"),[1] and related offenses.  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On May 5, 2018, [Appellant's] fiancé, Miranda Stump ("Stump") told [Appellant] that the decedent [("Victim")] raped her.  The rape occurred in a breezeway on the 500 block of Franklin Street.  Neither Stump nor [Appellant] knew [Victim's] actual name.  [Appellant] didn't know [Victim] personally but knew who he was based on Stump's description of him as "the Spanish male who sits on the step down Franklin Street."  Stump was addicted to heroin at the time and did not tell law enforcement she was raped until a

---

[1] 18 Pa.C.S.A. §§ 2502(a); 907(a), respectively.

week after [Appellant's] arrest in this case on May 16, 2018.

On May 9, 2018, shortly before [Appellant] stabbed [Victim], [Appellant] and Stump were at their apartment located on the 700 block of Franklin Street. Stump again provided [Appellant] with the description of the individual who raped her prior to their walk to Franklin Street. [Appellant] and Stump left their apartment so that [Appellant] could "have words" with [Victim]. Stump knew that when she and [Appellant] left the apartment there would be a confrontation between [Appellant] and [Victim]. Stump pointed out [Victim] to [Appellant] just prior to [Appellant] stabbing [Victim].

At approximately 9:30 p.m., [Victim] and a black male were on the steps outside of 537 Franklin Street, Reading, Berks County, Pennsylvania. Neither [Victim] nor the black male were in possession of weapons of any kind. While [Victim] was seated on the steps, [Appellant] approached him and stabbed him in the chest. [Victim] and the black male then chased after [Appellant] towards 6th Street. [Appellant] called for Stump to come with him as she was hiding behind a tree across the street. After failing to catch up to [Appellant], [Victim] and the black male returned to 537 Franklin Street. As they were returning, [Victim] was bleeding heavily and had to be helped to the stairs. [Victim] stated that he was going to die. The black male called an ambulance which arrived quickly to the scene. Law enforcement officers also arrived and identified [Victim] outside of 537 Franklin Street with a critical stab wound to his chest. [Victim] was bleeding and there was a large pool of blood. [Victim] died from the stab wound.

After [Appellant] lunged at and stabbed [Victim], [Appellant] and Stump ran directly back to their apartment on the 700 block of Franklin Street. They were afraid that [Victim] and the black male were going to attack them. While at their apartment, [Appellant] told Stump that he had killed [Victim] by stabbing him with a knife. [Appellant] also shaved his face and head. According to Stump, [Appellant] used a metallic red switch blade knife to kill [Victim].

On the day of the assault, Criminal Investigator Ryan Scrampsie…of the Reading Police Department responded to

537 Franklin Street. While on scene, [Investigator] Scrampsie walked towards the 600 block of Franklin Street and located a knife in a storm drain. After stabbing [Victim], [Appellant] was observed on video running into the 600 block of Franklin Street and being chased by [Victim]. He was also observed standing on the corner of 100 South 6th Street with Stump prior to the stabbing.

[Appellant] and Stump were both detained and interviewed by law enforcement on May 16, 2018. During the interview, [Appellant] admitted that he stabbed [Victim]. He also stated that he shaved his head to change his appearance after the stabbing. [Appellant] initially stated that he believed [Victim] had a weapon on him[5] and was defending himself but then changed his story saying that he "freaked out" and "snapped" and that he "hit the guy with it and ran." [Appellant] stated that the knife used to stab [Victim] was orange and he discarded it in the weeds along the train tracks by his building. The knife was unable to be located.

[5] During the interview, [Appellant] imitated the gesture he claimed caused him concern. When imitating [Victim], [Appellant] leaned forward and then reached his hand down towards his back/waist. However, he later admitted he just "freaked out" and "snapped" which contradicted his initial statement that he believed [Victim] possessed a weapon.

On the same day as the interviews of [Appellant] and Stump, a search warrant was executed on [Appellant's] apartment on the 700 block of Franklin Street. The apartment consisted of one room. A knife was discovered inside of that room between the wall and a mattress. Two additional knives were located inside of a pink tote in the room. Another knife with a black and yellow handle was located around the second doorway.

After [Appellant] was arrested, Stump went to visit him in prison. While she was there, [Appellant] told Stump that she should say that [Victim] was in possession of a firearm when the stabbing occurred. Also, on May 14, 2019, while [Appellant] was incarcerated in Berks County Prison, [Appellant] was involved in a telephone call which resulted in the filing of an additional criminal complaint against

[Appellant] for criminal attempt to commit solicitation of witness intimidation.

(Trial Court Opinion, filed January 31, 2020, at 2-4) (internal citations omitted).

Procedurally, a jury convicted Appellant on July 17, 2019, of first-degree murder, PIC, and related offenses. The court sentenced Appellant on August 5, 2019, to life imprisonment for murder and a consecutive 2½ to 5 years' imprisonment for PIC. Appellant timely filed a notice of appeal on August 30, 2019. On September 5, 2019, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following the grant of an extension of time, Appellant timely complied.

Appellant raises the following issues for our review:

Where the evidence reflected that the decedent was killed by [Appellant] and the Commonwealth presented conflicting evidence as to whether the victim possessed a weapon and/or whether Appellant acted in the heat of passion and/or had the specific intent to kill, was the evidence insufficient as a matter of law to prove either first or third degree murder?

Where [Appellant] presented evidence of both imperfect self-defense and heat of passion defenses, did the [trial] court err in not giving the jury instruction on both theories of manslaughter?

Where the court issued evidentiary rulings that stripped [Appellant] of the presumption of innocence and denied the right to a defense as to critical issues, did the [trial] court err?

(Appellant's Brief at 3).

In his first issue, Appellant argues the Commonwealth failed to prove he

acted with specific intent to kill. Appellant asserts that he stabbed Victim near the left clavicle/shoulder area, which is not a vital part of the body. Appellant maintains that when he left his apartment on the night in question, he just wanted to "have words" with Victim. Appellant emphasizes that the only weapon he had on his person that evening was a pocketknife, which he always carried. Appellant claims that when Ms. Stump initially disclosed the rape to him a few days before the stabbing, Appellant did not believe her because of her heroin addiction. Appellant insists that it was not until he saw Ms. Stump's reaction when she saw Victim on the night in question, and the fear she exhibited, that Appellant actually believed Victim had raped her.

Additionally, Appellant argues that he only stabbed Victim because he thought Victim was reaching for a weapon. Appellant highlights that Victim is much larger than Appellant. Appellant avers the evidence demonstrated that Appellant acted in the "heat of passion" or imperfect self-defense, such that a voluntary manslaughter conviction was more appropriate than a murder conviction. Regarding heat of passion, Appellant claims he stabbed Victim only upon seeing the man who had raped his fiancé. Appellant reiterates that he did not believe Ms. Stump's initial rape disclosure, so it was not until he saw Victim on the night in question that he believed the rape took place. With respect to imperfect self-defense, Appellant insists Victim reached behind him during their confrontation as if Victim was about to pull out a weapon. Appellant contends he believed Victim might have had a gun on his person,

and Appellant struck Victim once with the knife simply to incapacitate him so that Appellant could run away.

Appellant further stresses that testimony from one of the Commonwealth's witnesses, Mr. Burgos, was inherently unreliable. Appellant maintains Mr. Burgos was inside of his home during the initial confrontation between Appellant and Victim, so Mr. Burgos could not hear the conversation between them. Appellant insists Mr. Burgos' testimony that he could "see everything" because there was a full moon is untrue, where there was actually a pink moon on the night in question, which was not that bright.[2] Appellant claims Mr. Burgos' testimony that he could see Appellant's eye color and tattoo strains credulity. Appellant concludes the evidence was insufficient to sustain his first-degree murder conviction, and this Court must reverse. We disagree.

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of

---

[2] On appeal, Appellant claims the trial court should have taken judicial notice of the pink moon that evening. Appellant makes this assertion for the first time on appeal, so it is waived. *See* Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)). Nevertheless, "courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding." *Commonwealth v. Karkaria*, 533 Pa. 412, 419, 625 A.2d 1167, 1170 (1993) (internal citation omitted) (explaining that evidence which is so unreliable and contradictory that it is incapable of supporting verdict of guilty is insufficient as matter of law).

The Crimes Code defines first-degree murder as follows:

**§ 2502. Murder**

    **(a)   Murder of the first degree.—**A criminal homicide constitutes murder under the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a). "Specific intent to kill can be established though circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. N. Montalvo*, 598 Pa. 263, 274, 956

A.2d 926, 932 (2008), *cert denied*, 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009). "Also, we are cognizant that the period of reflection required for premeditation to establish the specific intent to kill 'may be very brief; in fact the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death.'" ***Commonwealth v. Rivera***, 603 Pa. 340, 355, 983 A.2d 1211, 1220 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010) (quoting ***Commonwealth v. Drumheller***, 570 Pa. 117, 146, 808 A.2d 893, 910 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003)).

The Crimes Code defines voluntary manslaughter as follows:

**§ 2503.  Voluntary manslaughter**

**(a)   General rule.**—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1)   the individual killed; or

(2)   another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

**(b)   Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(a), (b).  ***See also*** 18 Pa.C.S.A. § 505(a), (b) (discussing

use of force justifiable for protection of person and limitations on justifying necessity for use of force).

Concerning Section 2503(a), "[a]n objective standard is applied to determine whether the provocation was sufficient to support the defense of heat of passion voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable [person], confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection." **Commonwealth v. Miller**, 605 Pa. 1, 20-21, 987 A.2d 638, 650 (2009) (internal citations and quotation marks omitted). Regarding Section 2503(b), our Supreme Court has explained that imperfect self-defense "is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S.[A.] § 505 must have been met[.]" **Rivera, supra** at 363, 983 A.2d at 1225 (internal citation omitted).

Instantly, the trial court addressed Appellant's sufficiency claim as follows:

### Sufficiency of the Evidence—Specific Intent to Kill

[Appellant's] first challenge to the sufficiency of the evidence concerns the location of the stab wound on [Victim]. [Appellant] claims that the location of the stab wound on the upper chest, near the clavicle area, indicates that [Appellant] did not have the specific intent to kill [Victim]. …

\* \* \*

Pennsylvania courts have held that a knife is a deadly

- 9 -

weapon and the chest is a vital part of the body. ***See Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa.Super. 2005) (holding that a knife is a deadly weapon); ***Commonwealth v. Briggs***, [608 Pa. 430, 457, 12 A.3d 291, 307 (2011)] ("The chest and abdomen house the human body's chief circulatory and digestive organs, as well as a network of vital arteries and veins which supply them and, thus, are vital areas of the body.")

\* \* \*

In the case at bar, this court finds that the evidence was sufficient to convict [Appellant] of first-degree murder as the Commonwealth established that he had the specific intent to kill [Victim]. When [Appellant] and Stump left their apartment in the 700 block of Franklin Street, [Appellant] knew that Stump had been raped by a "Spanish male" and that this person "sits on the step down Franklin Street." Stump indicated that [Appellant] knew of the individual she described. The jury could have inferred that [Appellant] went out seeking revenge for the rape of Stump. Upon seeing [Victim], [Appellant] approached him and stabbed him with a knife. As set forth above, a knife is a deadly weapon and the chest is a vital part of the body. Pennsylvania law makes no distinction between parts of the chest that are vital or non-vital. … [Thus,] it is clear that the entire chest is a vital area of the body. This holding is supported by the facts of this case where [Appellant's] knife entered [Victim] high on his chest and just under his clavicle but resulted in [Victim's] death. Therefore, the jury could infer that [Appellant] had the specific intent to kill [Victim] based on [Appellant's] use of a knife to stab [Victim] in the chest.

**Sufficiency of the Evidence—Heat of Passion**

\* \* \*

In this case, there was sufficient evidence to support [Appellant's] conviction for first-degree murder and to find that [Appellant] did not kill [Victim] in the heat of passion. First, there is no evidence that [Victim] provoked [Appellant]. On May 5, 2018, Stump told [Appellant] that [Victim] had raped her. Four days later, [Appellant]

confronted [Victim] and stabbed him. There was no testimony that [Victim] was doing anything other than sitting on the steps when [Appellant] assaulted him. Also, there was no testimony that [Victim] took any provocative action against [Appellant] at any time. [Appellant] stated in his video interview that he believed [Victim] may have had a weapon because [Victim] leaned forward and reached his hand toward his waist. This was insufficient provocation to support a finding of voluntary manslaughter. Additionally, [Appellant] later admitted that he "freaked out," "snapped," and "hit the guy with it and ran."

… Based on the testimony presented, the jury could have inferred that [Appellant] learned of the alleged rape on May 5, 2018, and then went out looking for [Victim] on May 9, 2018, armed with a knife. Stump knew that there would be a confrontation between [Appellant] and [Victim] when she left the apartment. [Appellant] wanted to "have words" with [Victim]. The jury could have concluded that [Appellant] left the apartment looking for revenge against [Victim] for the alleged rape of Stump that occurred four days earlier. Therefore, when considering the evidence in the light most favorable to the Commonwealth, the jury could have determined that all of the elements of first-degree murder were established beyond a reasonable doubt.

\* \* \*

## Sufficiency of the Evidence—Self-Defense

\* \* \*

In this case, there was no evidence that [Victim] ever possessed a weapon or took any action against [Appellant] that would have justified the use of any force, deadly or otherwise. There were no weapons found on [Victim's] body or in the area where he was sitting when he was assaulted by [Appellant]. There was no testimony that anyone saw [Victim] with a weapon. The only movement allegedly made by [Victim] was leaning forward and putting his hand near his waist. Therefore, [Appellant's] belief that he was in imminent danger of death or serious bodily injury requiring the use of force against [Victim] was unreasonable and he was unable to establish that he acted in self-defense.

- 11 -

Although [Appellant] unreasonably believed that [Victim] had a weapon and deadly force was required, the defense of imperfect self-defense was not available as the remaining principles of self-defense were not satisfied. Here, [Appellant] was the aggressor as he sought out and confronted [Victim]. Furthermore, [Appellant] had a duty to retreat and failed to do so. Therefore, [Appellant] did not establish that he acted in self-defense[3] or imperfect self-defense.

**<u>Sufficiency of the Evidence—Conflicting Testimony</u>**

\* \* \*

[Appellant] first attacks the testimony provided by [Mr.] Burgos ("Burgos"), an eyewitness to [Appellant's] attack on [Victim]. He claims that the testimony of [Investigator] Scrampsie and Stump contradicted the testimony of Burgos.

At trial, Burgos testified that he was residing at 537 Franklin Street on May 9, 2018. At approximately 9:30 p.m., Burgos went downstairs and observed a Hispanic male ([Victim]) and a black male on the steps at 537 Franklin Street. Burgos testified that the Hispanic male ([Victim]) turned and said hello to him when he came outside. Burgos said hello in response. Burgos stated that when he went to light his cigarette, the Hispanic male ([Victim]) turned back and was hit in the chest by a white guy ([Appellant]). However, [Investigator] Scrampsie testified that Burgos provided a statement to law enforcement that he observed the white guy ([Appellant]) run up and punch the Hispanic male ([Victim]) as Burgos opened the door. [Appellant] argues in his concise statement that Burgos' inconsistent testimony about exchanging greetings with the Hispanic male ([Victim]) was inconsistent with the information he provided [Investigator] Scrampsie. [Appellant] also points out that Burgos testified that there was no argument between the white guy ([Appellant]) and the Hispanic male ([Victim]). [Appellant] argues that Burgos' testimony was inconsistent

---

[3] On appeal, Appellant concedes the evidence was insufficient to establish that he acted in self-defense.

with the testimony provided by Stump that she heard the voices of [Appellant] and [Victim] prior to [Appellant] lunging towards [Victim]. Therefore, [Appellant] claims Burgos' testimony is inherently unreliable.

Although [Appellant] relies upon Stump's testimony to attack the testimony of Burgos, [Appellant] simultaneously claims that Stump's testimony was inherently unreliable. He argues that her testimony was so equivocal as to what occurred, "especially given that she testified that [Appellant] did not leave their apartment with the intent to kill anyone, but rather to have words with [Victim]." [Appellant] also points out that [Stump] wasn't looking during much of the confrontation.

In this case, unlike **Karkaria, supra**, the verdict was not based on surmise or conjecture. The jury was not required to guess at which version of the story to believe due to the irreconcilable testimony of an inconsistent witness. The Commonwealth presented multiple witnesses during [Appellant's] trial. [Appellant's] claims regarding the inconsistencies of the testimonies of Burgos and [Stump] are attacks on their credibility.

\* \* \*

Here, since the exception set forth in **Karkaria, supra** does not apply, [Appellant's] claim is more properly characterized as a challenge to the weight of the evidence. However, [Appellant] failed to raise his claim before this court in accordance with Rule 607 of the Pennsylvania Rules of Criminal Procedure. **See** Pa.R.Crim.P. 607(a) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial"). Therefore, his challenge to the weight of the evidence is waived. …

(Trial Court Opinion at 6-15) (some internal citations omitted). The record supports the trial court's sufficiency analysis. **See Hansley, supra**. Therefore, Appellant's first issue on appeal merits no relief.

In his second issue, Appellant argues the court erred by failing to issue

a jury instruction on voluntary manslaughter. Appellant asserts the evidence showed he acted in the "heat of passion" or "imperfect self-defense" such that the voluntary manslaughter jury instruction was warranted. Appellant claims he requested a voluntary manslaughter jury instruction at the charging conference, but the court refused to give it. Appellant concludes the court erred by failing to issue his requested jury instruction, and this Court must vacate and remand for a new trial on this basis. We disagree.

Preliminarily, "to preserve a claim that a jury instruction was erroneously given, the [a]ppellant must have objected to the charge at trial." *Commonwealth v. Parker*, 104 A.3d 17, 29 (Pa.Super. 2014), *appeal denied*, 632 Pa. 669, 117 A.3d 296 (2015). Our Supreme Court has explained:

> The pertinent rules [of criminal procedure] require a specific objection to the [jury] charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue. This is particularly so where a judge believes that the charge adequately covered the proposed points.

*Commonwealth v. Pressley*, 584 Pa. 624, 630-31, 887 A.2d 220, 224 (2005) (internal citations and footnotes omitted). *See also* Pa.R.Crim.P. 647(c) (explaining that no portions of jury charge nor omissions from charge may be assigned error, unless specific objections are made thereto before jury

retires to deliberate); **Commonwealth v. Cosby**, 224 A.3d 372 (Pa.Super. 2019), *appeal granted in part on other grounds*, ___ Pa. ___, 236 A.3d 1045 (2020) (holding appellant waived challenge to court's consciousness-of-guilt jury instruction because he did not object when charge was given to jury; appellant's objections at charging conference were insufficient to preserve his challenge on appeal); **Commonwealth v. Parker**, 104 A.3d 17 (Pa.Super. 2014) (holding appellant waived challenge to jury instruction where he failed to object after court read jury charge; although appellant expressly objected to flight charge at charging conference, defense counsel responded negatively when court asked if any additions or corrections to jury charge needed to be made after court issued jury instructions).

Instantly, Appellant asked the court to issue a voluntary manslaughter jury instruction. (**See** N.T. Trial, 7/16/19, at 275; 282; R.R. at 305; 312) (N.T. Trial, 7/17/19, at 336; R.R. at 372). The Commonwealth objected to Appellant's request. (**See id.**) Ultimately, the court decided a voluntary manslaughter jury instruction was unwarranted based on the evidence presented. (**Id.** at 353; R.R. at 389). Significantly, after the court issued its jury charge, Appellant did not lodge an objection to the court's omission of the voluntary manslaughter jury instruction. The court expressly asked counsel if there were any additions or corrections concerning the jury charge, and defense counsel responded: "No, Your Honor." (**Id.** at 399; R.R. at 435). Under these circumstances, Appellant did not preserve his claim of error for

appellate review.  *See* Pa.R.Crim.P. 647(c); ***Cosby, supra***; ***Parker, supra***.

Consequently, Appellant's second issue on appeal is waived.

In his third issue, Appellant argues the court made several erroneous evidentiary rulings.  Specifically, Appellant asserts the court improperly curtailed his cross-examination of Ms. Stump.  Appellant contends he attempted to ask Ms. Stump about her heroin addiction and if Appellant had ever withheld money from Ms. Stump to purchase heroin, to show her potential bias and motive to testify against Appellant at trial.  Appellant also contends the court refused to let Appellant ask Ms. Stump if she was fearful after the night of the stabbing because she was afraid of gang members or others who might be looking for her.  Appellant insists this testimony was critical because it would have explained why Appellant changed his appearance after the stabbing—due to fear of retaliation from gang members.

Appellant also maintains the court erred by admitting evidence of multiple weapons in this case.  Appellant explains the court admitted, over his objection, the knife recovered in the storm drain, as well as four knives seized from Appellant's home upon execution of a search warrant.  Appellant claims this was not a case where there was a question about the murder weapon because Appellant admitted to stabbing Victim.  Rather, Appellant insists the Commonwealth sought to admit these knives merely to make Appellant look like a "bad man" or dangerous person in front of the jury.  Appellant also highlights that the Commonwealth could not connect any of the knives

presented at trial to the stabbing. Appellant contends admission of the knives was also unnecessary where Ms. Stump gave a description of the pocketknife Appellant used to stab Victim. Appellant stresses that none of the knives admitted was a pocketknife. Appellant concludes the court's evidentiary rulings destroyed his presumption of innocence, were unduly prejudicial, and require this Court to vacate and remand for a new trial. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

**Commonwealth v. M. Montalvo**, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Additionally: "A trial court has discretion to determine both the scope and permissible limits of cross-examination[; t]he trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." **Briggs, supra** at 501-02, 12 A.3d at 335 (internal citation omitted). Further, our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. **Commonwealth v. Stephens**, 74 A.3d 1034, 1037 (Pa.Super.

2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." **Commonwealth v. O'Brien**, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

"The threshold inquiry with the admission of evidence is whether the evidence is relevant." **Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa.Super. 2013), *appeal denied*, 625 Pa. 636, 89 A.3d 661 (2014). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." **Id.  See also** Pa.R.E. 401 (defining relevant evidence). Nevertheless, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Instantly, in addressing Appellant's challenges concerning the court's evidentiary rulings related to Ms. Stump, the trial court explained:

> At trial, Stump testified on direct examination that she was addicted to heroin on May 9, 2018, and using daily. [Defense counsel] had ample opportunity to cross-examine Stump regarding any animosity she may have had regarding [Appellant's] withholding of her heroin money. A review of [defense counsel's] cross-examination of Stump shows that he did ask Stump about her heroin use. … On redirect examination, [the Commonwealth] did not ask Stump anything about her heroin addiction. However…[defense counsel] sought to ask Stump about her heroin use [again]

- 18 -

on recross-examination. [Nevertheless, defense counsel's] recross-examination was limited to the matters raised by [the Commonwealth] on redirect examination. Therefore, this court properly prohibited [defense counsel] from asking those additional questions.

[Appellant] also claims that this court erred when it sustained the Commonwealth's objection to [defense counsel's] question to Stump regarding her fear of gang members seeking to attack her. …

\* \* \*

At sidebar, [the Commonwealth] objected based on a lack of relevance and that [defense counsel] had continued to ask Stump the same question about whether she was afraid of being attacked. When asked, [defense counsel] had no evidence to support his assertion that [Victim] and the black male were involved in a gang.

During [defense counsel's] examination of Stump, he repeatedly asked her if she was afraid that she was going to be attacked. Stump twice answered in the affirmative when asked if she believed that she was concerned that she could be attacked. [Defense counsel] then asked Stump if she was concerned that [Victim] and the black male could have been in a gang and that other people would seek to attack her. At that point, this court exercised its discretion and sustained [the Commonwealth's] objection as [defense counsel] had already established that Stump was concerned that she could be attacked and his inquiries had become quite repetitive. Additionally, there was no evidence from any source that [Victim] or the black male were in a gang. [Defense counsel] had no evidence to support his contention. This information was not relevant as it 1) did not make any fact more or less probable than it would have been without the evidence and 2) the information was of no consequence in determining the action. … Therefore, this court properly prohibited [defense counsel] from asking his question as he only sought to introduce this evidence to attack the character of [Victim] and the black male.

(Trial Court Opinion at 20-23) (internal citations omitted).

Here, the court did not permit defense counsel to inquire about Appellant withholding money for Ms. Stump to buy heroin on re-cross examination, because Appellant had an opportunity to explore that issue on cross-examination but did not, and because the Commonwealth did not bring up the issue on re-direct examination. We see no reason to disrupt the court's limitation on the scope of Appellant's re-cross examination of Ms. Stump. *See Briggs, supra*. *See also Commonwealth v. Romano*, 392 Pa. 632, 141 A.2d 597 (1958) (explaining cross-examination is matter of right but bounds of proper cross-examination are necessarily within sound discretion of trial judge; this is particularly so when applied to re-cross examination; counsel cannot be permitted to prolong course of trial by continually returning to matters already considered or as to which counsel has already been given ample opportunity to examine).

With respect to Appellant's attempt to elicit testimony from Ms. Stump about her fear of retaliation, the trial court properly sustained the Commonwealth's objection where Appellant had already asked Ms. Stump several times about her fear of retaliation, and there was no evidence of record to support the implication that Victim was part of a gang. *See* Pa.R.E. 401; 403; *Commonwealth v. Wilson*, 147 A.3d 7 (Pa.Super. 2016) (holding trial court did not abuse its discretion by concluding gang testimony was nothing more than attempt by defendant to impugn victim's character and that its effect would have been more prejudicial than probative and might have

confused jury).

Concerning Appellant's challenge to the introduction of several knives at trial, the trial court explained that "the forensic pathologist who examined [Victim] testified that [Victim's] wound was a stab wound caused by a sharp instrument that measured five and a half inches. At trial, the Commonwealth introduced the actual knife located in the storm drain and pictures of the knives located in [Appellant's] apartment. The jury could have determined that one of these knives was used to kill [Victim]." (Trial Court Opinion at 27) (some internal citations omitted). We agree with the trial court that the knives were admissible to show the jury that one of them could have been the murder weapon. **See Commonwealth v. Christine**, 633 Pa. 389, 125 A.3d 394 (2015) (explaining fact that accused had weapon or implement suitable to commission of crime charged is always proper ingredient of case for prosecution; any uncertainty that weapon is actual weapon used in crime goes to weight of such evidence; only burden on prosecution is to lay foundation that would justify inference by fact-finder of likelihood that weapon was used in commission of crime); **Commonwealth v. Lee**, 541 Pa. 260, 662 A.2d 645 (1995), *cert. denied*, 517 U.S. 1211, 116 S.Ct. 1831, 134 L.Ed.2d 935 (1996) (stating prosecution need not establish that particular weapon was actually used in commission of crime for it to be admissible at trial, where record establishes evidence demonstrating that Commonwealth laid foundation to justify inference that weapons seized by police could have been murder

weapons).

Although Appellant contends introduction of the knives was unnecessary because Ms. Stump described the murder weapon, Appellant mischaracterizes Ms. Stump's testimony. At trial, Ms. Stump made clear that she was standing across the street from Appellant when he stabbed Victim and that she did not actually see the stabbing. (*See* N.T. Trial, 7/16/19, at 101-03; R.R. at 131-33). Ms. Stump said that Appellant regularly carried a metallic red switchblade on his person and Ms. Stump did not see that knife again after the stabbing, so she assumed that was the murder weapon. (*See id.* at 110-11; R.R. at 140-41). Additionally, Appellant told police that he used a pocketknife to stab Victim and discarded it after the stabbing by the train tracks near his home, but police were unable to recover any such knife. Given that Ms. Stump did not actually see Appellant stab Victim or the murder weapon used, the jury was free to reject Appellant's testimony that the pocketknife he claimed he discarded was the murder weapon, and to infer one of the knives admitted at trial could have been the murder weapon. Therefore, we see no reason to disrupt the court's evidentiary rulings. *See M. Montalvo, supra*. Accordingly, Appellant's third issue merits no relief and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020