J-S30010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERARDO LEONEL PHOTIS | : | |
| | : | |
| Appellant | : | No. 1142 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 2, 2023
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0003254-2022

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED NOVEMBER 05, 2024**

Gerardo Leonel Photis appeals from the judgment of sentence entered

in the Lancaster County Court of Common Pleas on June 2, 2023. We affirm.

The trial court accurately summarized the factual and procedural history

of this case as follows:

> On the evening of November 30, 2021, [Photis] drove to his
> friend, Maria Cane's home in New Holland, Pennsylvania.  [Photis]
> and [] Cain had known each other for many years and spent time
> together occasionally, often drinking and catching up at [] Cain's
> residence. When [Photis] arrived on November 30th, he and []
> Cain talked, drank alcoholic beverages, and eventually decided to
> pick up food from a nearby diner. When [Photis] and [] Cain
> returned from picking up the food they had ordered, they ate
> together and consumed more mixed drinks.
>
> [] Cain eventually went to her bedroom to lay down with her
> dog while [Photis] stayed in the living room. [] Cain fell asleep
> without changing her clothing. Sometime later, [] Cain woke up

---

[*] Former Justice specially assigned to the Superior Court.

because she heard her dog yelp and realized that she was naked, face down on her bed with [Photis] behind her penetrating her anus. [] Cain immediately turned over, pushed [Photis] off, and told him to get out of her house.

After [Photis] left her residence, [] Cain quickly locked her door and called 911. Two officers from the New Holland Police Department, Officers John Yanarella and Michael Specht, arrived on scene at approximately 3:50 a.m. and observed a Hispanic male, later identified as [Photis], walking quickly out of [] Cain's apartment building. It appeared [Photis] was going to run and the officers unholstered their tasers, which prompted [Photis] to comply with their commands. When the officers made contact with [Photis], they observed that he was not wearing a shirt under his jacket and that his pants were sagging so much so that the top of his bare pubic region was exposed.

Officer Specht placed [Photis] in a police cruiser and stayed with him while Officer Yanarella went to speak with [] Cain. When Officer Yanarella entered [] Cain's apartment, [] Cain was very upset. [] Cain told Officer Yanarella about the assault and Officer Yanarella recommended that she be transported to Lancaster General Hospital for a Sexual Assault Forensic Evidence ("SAFE") examination. After the ambulance arrived for [] Cain, Officer Specht transported [Photis] to the police station for an interview. [Photis] was recorded on Officer Specht's body worn camera on the way to the police station and insisted that he "did not touch" [] Cain. He made similar statements, which were also recorded, during his formal interview at the police station and during transport from the police station.

When [] Cain arrived at Lancaster General, sexual assault nurse examiner, Angela Swann, performed a SAFE exam. Nurse Swann requested that [] Cain provide a urine sample as part of the examination. Prior to providing the sample, [] Cain was tearful but was able to answer the questions asked as part of the exam. However, when [] Cain returned from the bathroom, she was inconsolable. When asked what had triggered the change in behavior, [] Cain explained that when she had gone to bed that evening, she had a tampon inserted because she was on her menstrual cycle. When she went to the bathroom to provide the urine sample, she was unable to find the tampon string or feel the tampon in her body.

As part of the SAFE exam, Nurse Swann swabbed [] Cain's genital area for DNA. When she finished swabbing, Nurse Swann used a speculum to look inside [] Cain's vaginal cavity to attempt to locate the missing tampon. Nurse Swann was unable to view [] Cain's cervix during the exam because a white object was obstructing her view. Nurse Swann examined [] Cain's vaginal cavity further and concluded that the object was, in fact, the missing tampon.

Nurse Swann informed [] Cain that the tampon was still inserted but was much further inside of her vagina than a tampon would normally be. Consequently, a nurse practitioner was called to remove the tampon, which required an uncomfortable procedure called a "bimanual exam" during which the provider reached inside [] Cain's vagina with two fingers to rotate the tampon so that it could come back down the vaginal canal. Prior to discovering the lodged tampon, [] Cain had not known that she was vaginally penetrated during the assault. Importantly, DNA found on the swabs taken from both [] Cain's rectum and external genitalia matched [Photis]'s DNA profile.

Following the incident, [] Cain's SAFE examination, and [Photis]'s interview at the New Holland police station, [Photis] was charged with the following offenses: rape of an unconscious person, involuntary deviate sexual intercourse, vaginal sexual assault, anal sexual assault, and aggravated indecent assault of an unconscious person. He was also charged with aggravated assault and strangulation as a result of [] Cain's allegations of his behavior following the sexual assault. A jury trial commenced on February 6, 2023. At trial, on re-direct examination, [Photis] contradicted his prior recorded statements of not having touched [] Cain by testifying instead that they had consensual sex.

Trial Court Opinion, 11/27/23, at 1-5 (citations, footnotes, and unnecessary capitalization omitted).

On February 9, 2023, following trial, Photis was convicted of rape of an unconscious person, involuntary deviate sexual intercourse, two counts of sexual assault, and aggravated indecent assault. He was acquitted of aggravated assault and strangulation. Sentencing was deferred for

preparation of a presentence investigation report and a Sexually Violent Predator ("SVP") assessment.

On June 8, 2023, the trial court sentenced Photis to an aggregate term of 6 to 15 years' incarceration, plus mandatory lifetime sex offender registration requirements. Photis was determined not to fit the criteria of an SVP. Photis filed post-sentence motions for judgment of acquittal, a new trial, and reconsideration of sentence regarding his lifetime sex offender registration requirement. The trial court denied the motions. This timely appeal followed.

Photis raises the following issues on appeal:

I. Did the trial court abuse its discretion when it denied defense counsel the opportunity to re-direct questioning of [Photis] after being cross-examined by the Commonwealth, depriving [Photis] of his fundamental right to a fair trial.

II. Did the trial court err by denying the post sentence motion where the lifetime registration requirement set forth in revised subchapter H of Sorna constituted an illegal sentence because it is punitive in nature and effectively extends [Photis]'s maximum sentence without a jury's finding of future dangerousness in a violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d. 435 (2000).

Appellant's Brief, at 4 (unnecessary capitalization omitted)

First, Photis argues the trial court abused its discretion in denying defense counsel the opportunity to re-direct questioning of Photis after being cross-examined by the Commonwealth.

The scope of redirect examination is largely within the discretion of the trial court. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice,

manifest unreasonableness, or misapplication of law. Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences. Furthermore, when a trial court indicate[s] the reason for its decision our scope of review is limited to an examination of the stated reason.

***Commonwealth v. Fransen***, 42 A.3d 1100, 1117 (Pa. Super. 2012) (citations and quotation marks omitted).

Here, following direct examination by defense counsel, ***see*** N.T., Trial, 2/8/23, at 401-19, Photis was cross-examined by the Commonwealth. ***See id***. at 419-30. Photis was then examined again by defense counsel on redirect. ***See id***. at 430-35. Finally, the Commonwealth was permitted to re-cross Photis. ***See id***. at 435-37. When the Commonwealth concluded its re-cross, the following exchange occurred on the record:

[Trial Court]: Thank you, Mr. Photis. You can step down.

[Defense counsel]: Your Honor, I have a follow-up.

[Trial Court]: No. Step down, Mr. Photis. Defense, you have any additional witnesses or testimony?

[Defense counsel]: No, Your Honor. I was just going to find out if there was a receipt regarding when they went to the Park City Diner.

[Trial Court]: That's why it's done before trials, not during. Commonwealth, do you have any rebuttal evidence or testimony?

[Commonwealth]: Not at this time. The Commonwealth rests.

[Defense Counsel]: We have no other testimony.

***Id***. at 437.

In its opinion, the trial court explained its reasoning for not allowing any further redirect by maintaining that even if Photis had answered the proposed inquiry, the receipt was not available for trial because it had not been turned over to the Commonwealth during discovery. **See** Trial Court Opinion, 11/27/23, at 22-23.

Based on our review of the record, we cannot find the trial court abused its discretion by limiting a second redirect by defense counsel. The substance of the questioning—namely, Photis and the victim going to a diner at some point on the night in question, prior to the assault—had already been covered during protracted direct examination, cross examination, redirect, and recross examination. Defense counsel already had the opportunity to bring up the receipt on direct examination and initial redirect and failed to do so. We therefore see no reason to disrupt the court's limitation on the scope of redirect examination of Photis. **See Commonwealth v. Romano**, 141 A.2d 597, 600 (Pa. 1958) ("Cross-examination is a matter of right, but the bounds of proper cross-examination are necessarily within the sound discretion of the trial judge, and this is particularly so when applied to recross-examination. It must be clear that counsel cannot be permitted to prolong the course of trial by continually returning to matters already considered or as to which he has been given ample opportunity to examine; otherwise, there would be no orderly procedure, and nothing but confusion.").

Next, in light of our Supreme Court's recent decision in *Commonwealth v. Torsilieri*, 316 A.3d 77 (Pa. 2024) ("*Torsilieri II*"), we conclude Photis is due no relief on his second and final issue.

Photis argues his registration requirements constitute an illegal sentence because they are (1) punitive in nature, and (2) effectively extend his maximum sentence without a jury's finding of his future dangerousness in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Citing *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020) ("*Torsilieri I*"), Photis requests we remand for an evidentiary hearing regarding his claims. *See* Appellant's Brief, at 12-13.

Photis challenges his registration under Subchapter H of Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), which requires that sexual offenders who commit aggravated indecent assault after December 20, 2012, must comply with SORNA's lifetime registration and notification provisions as Tier III offenders. 42 Pa.C.S. §§ 9799.14(d)(7), 9799.11, 9799.23. Photis presents a pure question of law for which our standard of review is *de novo* and our scope of review plenary. *See Torsilieri II*, 316 A.3d at 86.

At the time Photis filed his brief in this Court, *Torsilieri II* was still pending. In making his argument, Photis relied on the proposition that the constitutionality of subchapter H was still "open." Appellant's Brief, at 8.

However, during the pendency of this appeal, our Supreme Court issued its decision in ***Torsilieri II***, in which it considered "whether the General Assembly's determination, in [SORNA II], that individuals who commit sexual offenses pose a high risk of committing additional sexual offenses constitutes an unconstitutional irrebuttable presumption violative of due process, because it impairs the right to reputation under the Pennsylvania Constitution." ***Id***. at 79. Dispositive to this appeal, our Supreme Court held SORNA subchapter H does not violate the irrebuttable presumption doctrine and is not punitive. ***See Torsilieri II***, 316 A.3d at 86. Therefore, Photis's argument, predicated upon claims that SORNA subchapter H is punitive and violated the irrebuttable presumption doctrine, must fail. Accordingly, we conclude we are bound by our Supreme Court's decision and affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/05/2024